```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,        )  Criminal Action No.
                                 )  17-201
vs.                              )
                                 )  2:08 p.m.
PAUL JOHN MANAFORT, JR. and      )  November 2, 2017
RICHARD W. GATES, III,           )  Washington, D.C.
                                 )
               Defendants.       )
   *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE AMY BERMAN-JACKSON,**
**UNITED STATES DISTRICT COURT JUDGE**


**APPEARANCES:**

```
FOR THE GOVERNMENT:      GREG D. ANDRES,
                         Senior Assistant Special Counsel
                         ANDREW WEISSMANN
                         KYLE R. FREENY
                         U.S. Department of Justice
                         Special Counsel's office
                         950 Pennsylvania Avenue NW
                         Washington, D.C. 20530
                         202-514-1746


FOR DEFENDANT MANAFORT:  KEVIN M. DOWNING
                         815 Connecticut Avenue, N.W.
                         Suite 730
                         Washington, D.C. 20006
                         (202) 754-1992

                         THOMAS EDWARD ZEHNLE
                         Miller & Chevalier, Chartered
                         900 Sixteenth Street, NW
                         Washington, D.C. 20006
                         (202) 626-5800
                         Email: Tzehnle@milchev.com
```


**(APPEARANCES CONTINUED)**

**APPEARANCES (CONTINUED):**


FOR DEFENDANT GATES:          SHANLON WU
                              Wu, Grohovsky & Whipple
                              1300 Pennsylvania Avenue, NW
                              Suite 700
                              Washington, D.C. 20004
                              (202) 204-3053
                              Email: Swu@dcwhitecollar.com


ALSO PRESENT:                 DAVID WALKER BOS,
                              Federal Public Defender

                              SHAY HOLMAN, Pretrial Officer

                              OMER MEISEL, Special Agent


Court Reporter:               Elizabeth Saint-Loth, RPR, FCRR
                              Official Court Reporter
                              (202) 354-3242


        Proceedings reported by machine shorthand, transcript
             produced by computer-aided transcription.

**P R O C E E D I N G S**

1

2          THE DEPUTY:  Your Honor, this afternoon we have

3    Criminal Case No. 17-201, Defendants 1 and 2, Paul Manafort,

4    Junior and Richard Gates.  Both Mr. Manafort and Mr. Gates

5    are present in the courtroom.  The pretrial services agency

6    officer present for these proceedings is Ms. Holman.

7          Would counsel for the parties please approach the

8    lectern and identify yourself for the record and the party

9    that you represent.

10          MR. WU:  Good afternoon, Your Honor.

11          Shanlon Wu on behalf of Mr. Gates.

12          THE COURT:  Good afternoon.

13          MR. DOWNING:  Good afternoon, Your Honor.

14          Kevin Downing for Mr. Manafort.

15          THE COURT:  All right.  Good afternoon.

16          MR. ANDRES:  Good afternoon, Your Honor.

17          Greg Andres, Andrew Weismann, and Kyle Freeny from

18    the Special Counsel's Office.  Also with us at our table is

19    Special Agent Omer Meisel from the FBI.

20          THE COURT:  Okay.  Good afternoon.

21          MR. ZEHNLE:  Good afternoon, Your Honor.

22          Thomas Zehnle on behalf of Mr. Manafort.

23          THE COURT:  All right.  Good afternoon.

24          Mr. Bos, you have a good seat, so I am not going

25    to force you to give it up.  But I believe that since

1    counsel has entered an appearance for Mr. Gates, your

2    services are not required at this time.

3              MR. BOS:  That's my understanding, Your Honor, but

4    I told Mr. Wu that I would remain present in case there were

5    any questions that came up to assist the Court.

6              THE COURT:  All right.  And I appreciate that as

7    well.

8              The first issue I was going to take up today was

9    the status of Mr. Gates' effort to retain counsel, but I see

10   that that has been resolved, and I am glad.

11             With respect to counsel for Mr. Manafort, I would

12   just ask -- I think that the docket has the incorrect

13   address and phone number information, if you can just make

14   sure that we get it right.

15             MR. DOWNING:  We have talked with your clerk about

16   that.

17             THE COURT:  All right.  Okay.  Thank you.

18             The Government has filed a memorandum under the

19   Speedy Trial Act, 18 U.S. Code Section 3161(c) seeking

20   designation of this case as a complex case and a finding

21   that the ends of justice would be served by granting

22   continuance beyond the time limits established by the act.

23   One factor would be the voluminous nature of the discovery,

24   time required for trial preparation, and the international

25   nature of the evidence and the events.

1          The memo represented that defendant Manafort had

2     no objection, but I just want to make sure I know what your

3     position is on that issue.

4          MR. DOWNING:  Thank you, Your Honor.

5          We agree with the designation for purposes of the

6     Speedy Trial Act.  We did speak with your clerk before you

7     took the bench today.  And we would like to have an April

8     trial date set for this case, and cocounsel is in agreement

9     with that.

10          THE COURT:  April.  In light of the designation, I

11     hadn't quite looked at my calendar for April.  That is

12     probably fine, but I think I need to let you know on that.

13          MR. DOWNING:  Okay.  Thank you.

14          THE COURT:  All right.  And counsel for Mr. Gates,

15     what is your position?

16          MR. WU:  Shanlon Wu for Mr. Gates.

17          We have informed the Government we have no

18     objection to that designation as well.

19          THE COURT:  Okay.  All right.  We may be able to

20     set a trial date today.  At this point, I don't even know

21     what the motions are going to be and what impact that's

22     going to have on the trial.

23          But I do find, with respect to both defendants,

24     that the ends of justice will be served by the establishment

25     of a schedule beyond the limits established by the Speedy

1    Trial Act and that doing that outweighs the interest of the

2    public and the defendant and a speedy trial.

3            I want to just talk about discovery briefly.

4            I imagine, Mr. Wu, that you haven't received much

5    yet, but -- there may be future orders in writing on this

6    matter.  But I want to establish for the record, at the

7    start, that I expect the United States to comply with its

8    obligations not only under Federal Rule of Criminal

9    Procedure 16, but its constitutional duty, under Brady

10   versus Maryland, to disclose to the defense information in

11   its possession that's favorable to the accused; and that

12   obligation starts now and will continue throughout the

13   trial.

14           I also want to bring to everyone's attention, as I

15   am sure you already know, that this is a case that's already

16   received and will continue to receive a great deal of public

17   attention.  I expect the parties and counsel to familiarize

18   themselves with Local Criminal Rule 57.7(b) concerning the

19   conduct of attorneys in criminal cases, and to comply with

20   all of its provisions.

21           Rule 57.7(b)(1) provides that:  It's the duty of

22   the lawyer or law firm not to release or authorize the

23   release of information or opinion which a reasonable person

24   would expect to be disseminated by means of public

25   communication, in connection with pending or imminent

1   criminal litigation with which the lawyer or the law firm is

2   associated, if there is a reasonable likelihood that such

3   dissemination will interfere with a fair trial or otherwise

4   prejudice the due administration of justice.

5          And Rule 57.7(c) contains specific guidance for

6   widely publicized cases.

7          In this case there has already been considerable

8   publicity fueled, at least in part, by extrajudicial

9   statements of counsel.  But this is a criminal trial, and

10  it's not a public relations campaign.  So I want to make it

11  clear, from this point on, that I expect counsel to do their

12  talking in this courtroom and in their pleadings, and not on

13  the courthouse steps.

14         It is my intention, in light of my obligation, to

15  safeguard the defendants' right to a fair trial, and to

16  ensure that we have the ability to seat a jury that hasn't

17  been tainted by pretrial publicity in this matter, to issue

18  a written order as permitted by Local Rule 57.7(c).  It

19  would require all interested parties, in particular counsel

20  for both sides, to refrain from making further statements to

21  the media or in public settings that are substantially

22  likely to have a materially prejudicial effect on this case.

23  But I want to give you the opportunity if you don't think I

24  should do so to tell me why not.

25         So if you think that I should not issue an order

1   under Local Rule 57.7(c), you can submit your reasons to me

2   in writing; and they will be due to me by next Tuesday,

3   November 7.  In the meantime, I expect you to abide by

4   today's admonition.

5         The defendants were released under the Bail Reform

6   Act under a combination of conditions under subsection (c)

7   of the act.  The conditions of release imposed by the

8   magistrate judge include the house arrest, with regular

9   reporting requirements and GPS monitoring, and on secured

10  appearance bonds.

11        As I understand it, those conditions were imposed

12  without objection but there is an unsecured appearance bond

13  form that needs to be signed.  So we need to make sure that

14  happens before anybody leaves the room.

15        The Government filed a memorandum related to bond

16  issues, but it wasn't a memorandum in support of any motion.

17  So I want to make sure I understand.  Was there a purpose

18  behind this kind of freestanding pleading, and are you

19  asking me to do anything?

20        MR. ANDRES:  Judge, we anticipated today that the

21  defendants would be moving to alter their bail conditions,

22  and it was in response to that that we filed that motion.

23  It was the basis for which we sought to have the Court note

24  that both defendants were a risk of flight and the basis for

25  which we believe substantial conditions should be imposed

1    and, in fact, were imposed.

2          And I have been informed by counsel for both

3    Mr. Manafort and Mr. Gates that today they are planning on

4    making a motion to alter those bond conditions.

5          THE COURT:  All right.  Well, at 10:51 this

6    morning defendant Manafort filed something that he called a

7    "response."  I had ordered yesterday that any requests to

8    alter the conditions of release had to be put to me in

9    writing, but this doesn't do that.  So is defendant Manafort

10   asking for a change in the conditions or not?

11         MR. DOWNING:  My apologies, Your Honor, about the

12   form of the filing, but yes.

13         What we were seeking -- and I think it's in the

14   last paragraph of our memo, was to -- the confinement was

15   intended to be temporary until we can get in front of this

16   court and work out the conditions of release.  So we are

17   asking at this time that the confinement be lifted and that

18   Mr. Manafort be allowed to be on the unsecured bond of

19   $10 million.

20         THE COURT:  All right.  Well, the magistrate

21   judge's order didn't say temporary until before you get

22   before this Court.  She imposed those conditions.

23         So I am not going to -- I am not going to take up

24   a request for changing conditions without a motion

25   explaining to me what change you want, specifically, and why

1    that would assure the defendant's appearance.  I agree that

2    no one in this case is suggesting that either gentleman is

3    dangerous.

4         MR. DOWNING:  Well, Your Honor, I understand it

5    may not be in the order.  But in the courtroom, between the

6    Government and Mr. Manafort's counsel, as well as Mr. Gates'

7    counsel, the idea that this would be temporary until we got

8    in front of you today, and that was the understanding that

9    we articulated to the Court.

10        The conditions of the confinement at that time had

11   to be in accordance with pretrial services' rules.  And we

12   in no way wanted to have a situation where this was going to

13   be a long-term condition; and the United States agreed with

14   us on that issue.

15        I apologize about the form of the application but,

16   certainly, there was no intent on our part, or a requirement

17   by the United States government, that this be a long-term

18   situation.

19        THE COURT:  All right.  Well, are you seeking to

20   alleviate the GPS monitoring or just the home confinement?

21        MR. DOWNING:  The GPS monitoring.

22        THE COURT:  And the home confinement?

23        MR. DOWNING:  No.

24        THE COURT:  All right.  Then now I am not sure

25   which one you want.

1            So you want him under house arrest but without GPS

2    monitoring, or do you want him subject to GPS monitoring but

3    he can go out?

4            MR. DOWNING:  I was hoping for option three, but

5    I'm --

6            THE COURT:  Well, you need to tell me what it is.

7    What is it?

8            MR. DOWNING:  Well, we don't think that there is a

9    need for the GPS monitoring with respect to Mr. Manafort.

10   But we have no objection to having curfews set and

11   conditions set about when and for what he can leave his

12   residence at this time until we resolve the issue for his

13   bond.

14           THE COURT:  All right.  Well, I am still just not

15   exactly sure what you are asking for.  And this is why I

16   have bond review motions put in writing, so you can tell me

17   what you think you want, and they can tell me whether they

18   think it's appropriate.

19           I can understand why there would be many reasons

20   why he should be free to come and go from his home.  But the

21   GPS monitoring, I think, is a pretty important component of

22   his bond in this case.  So I am going to need to see some

23   good reasons for why he shouldn't be required to submit to

24   it.

25           Since you haven't filed a motion seeking a change

1    in his condition, although you have the opportunity to do

2    so, and you can do it as soon as you wish to do so.

3            Mr. Gates has filed a motion, but he filed it at

4    1:41 this afternoon.  And I will tell you, Mr. Wu, I have

5    yet to read it or think about it; and I do want the

6    Government to have an opportunity to respond to it.

7            So what we can do today is give everybody a chance

8    to put everything on the record in writing that they want me

9    to consider and set a hearing for bond review on a very

10   short schedule.  I am happy to consider anything that

11   anybody gives me; but I am not going to rule on the fly from

12   the bench right now.

13           MR. DOWNING:  Not even with respect to if he's on

14   the GPS monitoring, he is not confined to his house?

15           THE COURT:  Well, is that what you are asking for?

16           MR. DOWNING:  I will ask for that.

17           THE COURT:  What is your position, Mr. Andres?

18           MR. ANDRES:  Judge, we were told that pretrial

19   services required the GPS monitoring.  So at least part of

20   what Mr. Downing said is true, which is that -- the

21   defendants basically said:  We want the opportunity to be

22   released; we all agreed on these conditions.

23           The condition that the Government had for review

24   was not subject to coming before Your Honor but, rather,

25   that subject to the defendants providing us with an

1    acceptable bail package, that is, sureties or property or

2    something that we could rely on that would, again, ensure

3    that the defendants would return to court.  So that -- that

4    is what we were expecting.  That is, we're expecting to see

5    a response with respect to sureties or property or something

6    that would properly secure the bail and the defendant's

7    return to court.  And we haven't seen that from either of

8    the defendants.

9           THE COURT:  Well, I have a question about that

10   also, which was why either side thought that the unsecured

11   appearance bond was sufficient to reasonably assure their

12   appearance.  But, again, because you didn't actually move

13   for a different condition, I didn't understand what your

14   position was either.

15          So, at this point, I think it's fair to say that

16   their position is contingent upon your position, your

17   position has changed two times since you stood up.  So I

18   think everybody needs to think through and talk through what

19   their position is.

20          I am concerned, very concerned, in light of the

21   information that's been provided to me in the Government's

22   memorandum, that an unsecured appearance bond in and of

23   itself is not sufficient and that bond, without some sort of

24   monitoring, is not sufficient.  I am not sure that they need

25   to be under house arrest and lock and key day in and day

1   out.  But I do think if they leave and they don't come back,

2   we need to know where they went.

3           So, right now, I'm going to leave the conditions

4   in place.

5           We have one motion that's been filed.

6           Mr. Downing, when do you think you can file your

7   motion?

8           MR. DOWNING:  We'll file it this evening.

9           THE COURT:  All right.  Can the Government respond

10  to it tomorrow?

11          MR. ANDRES:  Yes, Judge.

12          THE COURT:  All right.  I guess the question is --

13  then why don't we have a bond hearing first thing Monday

14  morning?

15          MR. ANDRES:  No objection from the Government,

16  Judge.

17          THE COURT:  I think that, from what I'm hearing,

18  the defense may get a more favorable response from the

19  Government if they have some kind of proposal for security

20  or a surety in connection with the bond.  I realize you may

21  not want to wait until Monday to resolve this, but that

22  might give everybody time to put this in place.

23          Mr. Wu.

24          MR. WU:  Your Honor, I apologize for that late

25  filing.  We saw the minute order yesterday and wanted to get

1    something on file for you.  I won't re-argue what is in the

2    motion at the moment.

3              Is there any possibility we could push this a

4    little bit faster and get it to Friday because, on behalf of

5    Mr. Gates, we also are hoping to persuade the Court that

6    there would be no need for the GPS monitoring and,

7    certainly, no need for the home confinement in light of his

8    characteristics.

9              THE COURT:  Well, you know, I do appreciate the

10   fact that both defendants turned themselves in in this case.

11   And I am aware of the fact that the fact that they have been

12   under investigation has not been a mystery.  But whether

13   they were going to be charged, when they were going to be

14   charged, and what they were going to be charged with is

15   something that I don't know if it was known before they were

16   indicted, and the charges are significant; and their ties

17   and their assets abroad and here are significant.  So I have

18   concerns about flight.

19             I haven't read your motion.  I don't intend to

20   rule on it without fairly considering everything that's in

21   it.  But I want to give the Government an opportunity to

22   respond.

23             Now, I know some of their information was filed

24   proactively.  But they may wish to address what's in there,

25   and Mr. Manafort's pleading hasn't even been filed yet.  So

1    even if he files it tonight, I don't quite see how we get

2    back in court tomorrow.  So I am going to set a bond review

3    hearing at 9:30 Monday morning.

4              MR. WU:  Very well, Your Honor.

5              THE COURT:  All right.

6              And if you all decide you want to reply to

7    something that the Government files, you need to file it

8    before Monday morning.  You can file it Sunday night; I will

9    be checking the docket.  But I'd like to not have something

10   that shows up about ten minutes before I take the bench.

11             All right.  Can I just have counsel at the bench

12   for a brief scheduling matter?

13             (Whereupon, a bench conference was held.)

14             THE COURT:  I just want to put on the record -- I

15   don't think this is a matter that requires recusal in any

16   way, shape, or form; but I would like everybody to know if I

17   have ever had any prior connection with anybody in this

18   case.

19             I just want to state for the record that

20   Mr. Weissmann was on the Enron Task Force, and I represented

21   someone who was a witness in that investigation and someone

22   who was a subject in that investigation and was cocounsel.

23   So we were averse to each other at that time.  That was

24   quite some time ago, and that's our only contact.  My client

25   was actually not charged.

1          But I just thought, since I have had prior

2    interactions with Mr. Weissmann, who may not even remember

3    that, that it was useful to put it on the record.  If

4    anybody thinks a motion is required, they can; I don't think

5    there is any action that needs to be taken under that.

6          All right.  Thank you.

7          MR. ANDRES:  Thank you.

8          MR. DOWNING:  Thank you.

9          MR. WU:  Thank you.

10          (Whereupon, the bench conference concludes.)

11          THE COURT:  All right.  So we now have the next

12    hearing in the matter scheduled.  And I will consult my

13    schedule between now and then and have my calendar with me,

14    and we can set a presumptive trial date.

15          There is no reason why we shouldn't be able to try

16    this case on the schedule that you all are talking about.

17    But I also want to -- I have a criminal case that I think is

18    in March.  And I just want to make sure that I schedule it

19    on a date that leaves me enough time to finish that one

20    before we start this one.

21          Is there anything else I need to take up right now

22    on behalf of the Government?

23          MR. ANDRES:  Judge, we were asked by pretrial

24    services to notify the Court that Mr. Gates has not in fact

25    turned over all of his passports.

1          As part of his -- the Government's request he

2    self-surrender, he was required to provide to an FBI agent

3    his passports.  And we have since been informed by his

4    counsel that he has another passport and other travel

5    documents.  I believe that he can be ordered to turn those

6    over either today, to our FBI agent, or otherwise to

7    pretrial services.

8          THE COURT:  All right.  Mr. Wu.

9          MR. WU:  Your Honor, I had informed the Government

10   this morning that, as part of due diligence, Mr. Gates had

11   discovered he had a pending application for a passport; it

12   was received.  We are prepared to turn that over.

13          There is also another document I am not familiar

14   with called a passport card.  It may not be useful for

15   traveling, but we are going to turn all that over today.

16   And I so informed the Government this morning.

17          THE COURT:  All right.  So to whom are you going

18   to turn it over, and when?

19          MR. WU:  I assume to an FBI agent right after the

20   proceedings, but that's up to the Government.

21          THE COURT:  All right.  That would be good.

22          And has -- the plea that you filed, the

23   memorandum, referred to a number of passports in

24   Mr. Manafort's name.  Does the Government have them all?

25          MR. ANDRES:  Yes, Judge.

1          THE COURT:  All right.  And if anyone becomes

2     aware of any others, they need to be turned in as well.

3          All right.  Is there anything else I need to take

4     up right now on behalf of Mr. Manafort?

5          MR. DOWNING:  No, Your Honor.

6          THE COURT:  Okay.  Anything further on behalf of

7     Mr. Gates?

8          MR. WU:  Court's indulgence.

9          (Whereupon, Mr. Wu and Defendant Gates confer.)

10          MR. WU:  Your Honor, on behalf of Mr. Gates, if

11     the conditions remain in effect over the weekend, does that

12     mean, for example, he would not be able to attend any

13     children's activities over the weekend, outside of the

14     house, even though he has the GPS monitoring, or is that a

15     question for pretrial services?

16          THE COURT:  Well, I believe the order, at this

17     point, included leaving the house for meetings with counsel,

18     religious observances, medical procedures.

19          What is it that you are seeking to do?

20          MR. WU:  If I can make a verbal or an oral

21     amendment to that to be allowed to leave the house for

22     children's activities, such as sports games, that are

23     happening over the weekend.

24          THE COURT:  What's the Government's position on

25     that if he has the GPS device?

1          MR. ANDRES:  Judge, we don't have any objection.

2    But I think that's, in part, an issue for pretrial services,

3    so that they can monitor him properly; but the Government

4    doesn't have an objection.

5          THE COURT:  Well, I don't think they're going to

6    be following on a minute-to-minute basis, as I understand

7    how the GPS monitoring actually operates.  But do you know

8    when these events are supposed to take place, Mr. Wu?

9          MR. WU:  Court's indulgence.

10          (Whereupon, Mr. Wu and Defendant Gates confer.)

11          MR. WU:  There is a sports tournament Saturday

12    morning and Sunday afternoon.

13          My understanding of how the GPS system works is,

14    if he were to leave the house, there would be an alarm

15    notification that he left the premises.  So I think at least

16    to the extent of if he physically leaves the house, they

17    would know that right away.  So we have to make sure they

18    are on board with that.

19          MS. HOLMAN:  Your Honor, may pretrial be heard?

20          THE COURT:  Yes.

21          MS. HOLMAN:  Your Honor, Shay Holman, pretrial

22    services.

23          If the Court will allow the exception, Mr. Gates

24    would need to provide the address location of the events

25    that he would be attending, the time he would be leaving to

1    attend the events and the end time of the events, so that

2    the Eastern District of Virginia can set the times for the

3    GPS monitoring to have -- like give him time to travel to

4    the events, attend the events, and then time to get back

5    home.

6            THE COURT:  All right.  Thank you.

7            Do you have that information, Mr. Wu, what time

8    are these things supposed to start?

9            MR. WU:  We can get that.  We have no objection to

10    those conditions.

11            THE COURT:  All right.  Well, provided that you

12    provide the appropriate information to pretrial services, I

13    will permit him to leave the house to attend those events

14    and then return; but the time he needs to leave and the time

15    he needs to get back needs to be provided.

16            MR. WU:  Thank you, Your Honor.

17            THE DEPUTY:  That's this weekend only?

18            THE COURT:  Yes.  Saturday and Sunday of this

19    weekend.

20            All right.  We will have a bond review hearing on

21    Mr. Gates' motion and Mr. Manafort's impending motion at

22    9:30 Monday morning.  Thank you.

23            MR. ANDRES:  Thank you, Your Honor.

24            MR. WU:  Thank you.

25            THE DEPUTY:  All rise.

1    THE COURT:  Wait.  The defendants have to sign --

2    THE DEPUTY:  We got them.

3    THE COURT:  You have got them already?  Have they

4    been signed?

5    THE DEPUTY:  Yes, we got them.

6    THE COURT:  All right.  Thank you.

7    THE DEPUTY:  I will get their addresses.

8    THE COURT:  Okay.

9    THE DEPUTY:  This Honorable Court now stands in

10    recess until return of court.

11    (Whereupon, the proceeding concludes, 2:33 p.m.)

12              *  *  *  *  *

13              **CERTIFICATE**

14

15    I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

16    certify that the foregoing constitutes a true and accurate

17    transcript of my stenographic notes, and is a full, true,

18    and complete transcript of the proceedings to the best of my

19    ability.

20

21

22    Dated this 3rd day of November, 2017.

23

24    /s/ Elizabeth Saint-Loth, RPR, FCRR
     Official Court Reporter

25