```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


  United States of America,        )  Criminal
                                   )  No. 17-201
                 Plaintiff,        )
                                   )  Motions Hearing
  vs.                              )
                                   )  Washington, DC
  PAUL JOHN MANAFORT, JR.          )  November 21, 2017
  RICHARD W. GATES, III,           )  Time: 1:00 p.m.
                                   )
                 Defendants.       )
 _____

             TRANSCRIPT OF MOTIONS HEARING
                      HELD BEFORE
         THE HONORABLE JUDGE AMY BERMAN JACKSON
                UNITED STATES DISTRICT JUDGE
 _____

                      A P P E A R A N C E S

  For the Plaintiff:       GREG D. ANDRES,
                           Senior Assistant Special Counsel
                           ANDREW WEISSMANN
                           KYLE R. FREENY
                           U.S. Department of Justice
                           Special Counsel's office
                           950 Pennsylvania Avenue NW
                           Washington, D.C.  20530
                           202-514-1746


  For Defendant Manafort:  KEVIN M. DOWNING
                           815 Connecticut Avenue, N.W.
                           Suite 730
                           Washington, D.C. 20006
                           (202) 754-1992

                           THOMAS EDWARD ZEHNLE
                           Miller & Chevalier, Chartered
                           900 Sixteenth Street, NW
                           Washington, DC 20006
                           (202) 626-5800
                           Email: Tzehnle@milchev.com
```

```
For Defendant Gates:    SHANLON WU
                        Wu, Grohovsky & Whipple
                        1300 Pennsylvania Avenue, NW
                        Suite 700
                        Washington, DC 20004
                        (202) 204-3053
                        Email: Swu@dcwhitecollar.com

ALSO PRESENT:           Andre Sidbury, Pretrial Officer
_____

Court Reporter:         Janice E. Dickman, RMR, CRR
                        Official Court Reporter
                        United States Courthouse, Room 6523
                        333 Constitution Avenue, NW
                        Washington, DC  20001
                        202-354-3267
```

1    THE COURTROOM DEPUTY:  Good afternoon, Your Honor.
2  We have criminal case number 17-201-1 and 201-2, the United
3  States of America v. Paul J. Manafort, Jr., and the United
4  States of America v. Richard W. Gates, III.  Both defendants
5  have waived their appearance for today's hearing.
6    Will counsel for the parties please approach the
7  lectern and identify yourself for the record.
8    MR. WEISSMANN:  Andrew Weissmann and Greg Andres
9  and Kyle Freeny for the government.
10    THE COURT:  Good afternoon.
11    MR. WU:  Good afternoon, Your Honor.  Shanlon Wu
12  on behalf of Mr. Gates.  And we did file a notice of his
13  understanding of his right to be here, and he's waived that
14  right.
15    THE COURT:  Okay.  Thank you.
16    MR. DOWNING:  Good afternoon, Your Honor.  Kevin
17  Downing and Tom Zehnle for Mr. Manafort.  We've also advised
18  the Court that our client has waived his right to appear
19  here today.
20    THE COURT:  All right. And I've seen both of the
21  written waivers and I appreciate that.  And ordinarily -- I
22  think it's a very extraordinary thing to do -- you can be
23  seated -- but I'm not planning to rule on the merits of any
24  issue.  This is all generally procedural, with respect to
25  everything except the request for Thanksgiving.  And I will

1    address Thanksgiving in a moment.  But there were a couple
2    of procedural things that I wanted to talk about that just
3    seemed easier to discuss in person.
4             First of all, with respect to Mr. Gates, there
5    just seems to be some confusion about how to proceed, and I
6    want to make myself very clear.
7             I thought I did make it very clear, at the bond
8    review hearing on November 6th, that I'm open to releasing
9    the defendants from home confinement, but that I wouldn't do
10   it based on the unsecured appearance bond.  I ruled that it
11   would have to be a bond backed by a security or a surety
12   bond; that was $10 million for Mr. Manafort and $5 million
13   for Mr. Gates.
14            I read excerpts of the Bail Reform Act Section
15   3142(c)(1)(B) (xi) and (xii) and I detailed what had to be
16   provided to satisfy those release conditions.  And I'm not
17   going to read it to you again.  I did not rule that you had
18   to come to an agreement with the government, you were
19   working towards that.  I'm still hopeful that that will
20   happen.  But I assured you that if you could not, you could
21   file a motion and you could submit the financial information
22   to me.  That would enable you to make the showing described
23   in the statute and then I could rule on that.
24            I want to make it very clear that no one has done
25   that yet.  Mr. Gates represented in the pleading concerning

1    Thanksgiving, quote, Mr. Gates makes this request on the
2    ground that he and his wife have pledged real property, i.e.
3    their residence, to secure the bond that has been imposed
4    here; telling me that they've actually already done it.
5    Makes reference to a footnote, and the footnote says Mr.
6    Gates submitted the necessary paperwork to pledge the
7    property to the Clerk of the Court on Friday, November 17th,
8    2017, and the Clerk of the Court has advised counsel that
9    the paperwork has been submitted to this Court for approval.
10           All right.  Mr. Wu, I have some questions for you.
11   First of all, what does that mean?
12           MR. WU:  Your Honor, we understood the process to
13   be, from the Clerk of the Court, that first there had to be
14   a pledging application, which has contained within it a
15   place for a judge to sign.  In addition to that, they told
16   us to accompany that to the Clerk's Office with a copy of
17   the deed, as well as photocopies of the photo identification
18   of the owners.
19           The Clerk's Office then advised us that nothing
20   further could happen until the judge had approved that.  We
21   understood from them that once the judge -- if the judge
22   approves it, we would then have to go to the recorder of
23   deeds in wherever the property is, to show them that there
24   would be a lien filed and then have that proof brought back
25   to the Court for that security.  So that's the process that

1  we were following.
2          It did not seem, and -- and this is our ignorance
3  if we're wrong, but it did not seem appropriate to file a
4  motion with that because we understood that the application
5  had first to be approved.
6          THE COURT:  All right.  Well, I was quite taken
7  aback when someone from the Clerk's Office showed up in my
8  chambers on Friday and said this was dropped off in the
9  Clerk's Office and they asked us to bring you a copy.  The
10 Clerk's Office personnel do not serve as a messenger service
11 and you cannot communicate with the Court by passing notes.
12 We have ECF in this courthouse, we have local rules that
13 everybody who joined this proceeding pro hac had to read.
14 And I know you're deeply familiar with them.
15         There's no question that ultimately this piece of
16 paper will have to be filed to complete the process of
17 pledging the property.  But, you have to operate on the
18 docket for a number of salutary reasons.  First of all, then
19 the opposing party knows what happened, number one.  Number
20 two, then there is a precise and accurate record of
21 everything the Court has seen.  And, number three, we have a
22 public that is tremendously interested in this case, that is
23 reading even the things that have been filed by people that
24 aren't parties in this case.  And so you can't just sidestep
25 this process by dropping things off in the Clerk's Office.

1          There's also some other problems with the
2   document.  First of all, it says the assessed value of the
3   property is $2.9 million and the mortgage is just under
4   $1.3 million.  So, there's some equity there, but it's not
5   5 million.  Number two, it's quite incomplete.  There are no
6   documents provided to verify the stated value, not even
7   whatever assessment that you're relying upon to get to the
8   2.9.  The only document you attach, the deed of trust, says
9   it was 1.9 in March of 2016, which is a spectacular million-
10  dollar appreciation over an 18-month period, and there's no
11  verification for that at all.  And most important, this is
12  not a document that has been submitted to this Court for
13  approval.  That's just not how we're going to do this.
14         If you don't reach an agreement from the
15  government and you want to get me started looking at what
16  you have offered for security, then what you have to do is
17  file a motion to modify the bond conditions, attach the
18  financial documents that will establish and verify the value
19  of the property or the assets available to the surety, just
20  as I explained in great detail two weeks ago.
21         You can have this back.  Mr. Haley, you'll have to
22  be the messenger.
23         Because as far as the record in this case is
24  concerned, nothing has been submitted to me by you yet.  I
25  have not ruled on it.  I can't rule on things that just come

1    over the transom.
2         Now, with respect to Thanksgiving, I denied the
3    motion that was docket 47, that was seeking release for a
4    myriad of purposes and a myriad of events, including
5    Thanksgiving.  But I did let the parties know they could
6    submit a specific request about the holiday.
7         Your motion, the new motion, docket 54, is not
8    terribly specific.  Reference has been made to attendance at
9    two events; 11 hours worth of events on November 23rd, and
10   seven hours more -- of two more events on November 24th.  So
11   we've got a total of 18 hours over two days for
12   Thanksgiving.  And you say they are within Virginia, but you
13   don't say where.  And there is a geographical restriction in
14   this case.  So I would like to know, where exactly does he
15   want to go and when?
16        MR. WU:  Your Honor, may I address the earlier
17   portion of your remarks?  Or would you like me to --
18        THE COURT:  Briefly.  I appreciate your explaining
19   to me that this is what you thought you had to do.
20        MR. WU:  The only other distinction I would add to
21   that is we were not pledging that amount in the understanding
22   that was the complete bail package.
23        THE COURT:  I appreciate that.
24        MR. WU:  We're trying to put something in because
25   we're asking you for a new chance at Thanksgiving release.

1                With regard to your question about location, we
2     were deliberately vague in that in a public filing.  We've
3     also had other conversations with the government in which,
4     first, of course, pretrial services will know the exact
5     location, and we'll also let the government know.  But --
6     and we're happy, of course, to let the Court know.  We
7     simply didn't want to put that in a public filing for
8     reasons, obviously, for the family.
9                THE COURT:  I didn't expect the address, but I
10    just didn't even know if you're talking about Richmond or if
11    you're planning to get into a car and drive to some area of
12    Virginia.
13               MR. WU:  Would it be okay to approach at the bench
14    to give you that information, so it would not be public?
15               THE COURT:  Yes, but then I think we need to seal
16    this transcript because otherwise our transcripts will be
17    all docketed.  So this portion of the hearing will be
18    sealed.  And, yes, you can approach the bench.
19               One of the counsel for Mr. Manafort might as well
20    come, because I'm going to ask you the same question.
21               (Sealed bench discussion:)
22    ███████████████████████
23    ████████████████████████
24    ████████████████
25    ████████████████████████████









1  ███████████████████████████████████████
2  ████████████████████████████████████████
3  ██████████
4  ███████████████████████████████
5  ███████████████████████████████████████
6  █████████████████████████████████████████
7  ████████████████████████████████████████
8  █████████████████████████████████████████
9  ████████████████████████████████████████
10 ████████████████████████████████████████
11 ██████████████████████████████
12 ████████████████████
13 ██████████████████████

14          (Open Court.)
15          THE COURT:  All right.  With respect to the two
16 motions seeking limited relief for the purposes of attending
17 family events for Thanksgiving, both motions are going to be
18 granted, subject to the conditions that by 5 p.m. tomorrow
19 both defendants have provided Pretrial Services Agency with
20 the exact times and locations of where they're going and
21 when.  Neither defendant may consume alcohol at any of these
22 events.  I think those were the two conditions.
23          MR. WU:  I believe also, both defendants were
24 going to maintain the GPS monitoring.
25          THE COURT:  Yes.  Well, you have to maintain them

1    because you can't take them off.  So you're not going to be
2    relieved from your GPS monitoring condition, you're just
3    being permitted to depart from the home for the limited
4    purposes that we've identified.
5             All right.  I also just wanted to establish, the
6    government filed a motion early in these proceedings, docket
7    19, seeking a retraining order relating to one of Mr.
8    Manafort's insurance policies.  Are you going to oppose
9    that, or is that now wrapped up in your ongoing bond
10   negotiations?
11            MR. DOWNING:  Your Honor, I think it's part of the
12   discussions that we're having with the government.  So we'll
13   get back to you on that.
14            THE COURT:  So if it's not covered in those
15   discussions, at some point you're going to need to put your
16   position with respect to that on the record, but I'm not
17   going to expect it right now.
18            Finally, the government filed a motion to review
19   the representation of defendant Gates, docket 52.  I'm not
20   going to address the merits until the defense has an
21   opportunity to respond.  Although I do have a few questions
22   I want to ask you this morning.
23            So, Mr. Wu, how long would your team like to file
24   a response to that motion?
25            MR. WU:  Your Honor, I would ask for ten days.

1       THE COURT: All right. I know we're bearing down
2  on Thanksgiving here.
3       MR. WU: That's true, Your Honor. I may have been
4  overly optimistic. I forgot about that.
5       THE COURT: Why don't we say December 4th. That
6  gives you all next week and then -- so Monday, December 4th,
7  opposition will be due.
8       I'm not going to ask you any questions, but I do
9  have a couple of questions for the prosecution about it.
10       I understand in the motion that you've set forth
11  some financial relationships between defendant Gates and the
12  defendant in the New York matter. But I really had some
13  difficulty discerning what is the conflict that actually
14  exists on the part of the lawyer. You say on, page 2, that
15  the conduct in the two cases is separate and apart, but you
16  posit, on page 3, that Gates might have knowledge about the
17  allegations against Brown and he could be a potential
18  witness in the case against Brown. And then you say Brown
19  might have knowledge about Gates and it's at least possible
20  that Gates or Brown could become a witness for the
21  government, or that information Mr. Mack learned from Brown
22  or Gates could be relevant to the defense of the other. And
23  then you say however unlikely those propositions are, that I
24  should assert myself into the attorney-client relationship
25  in an abundance of caution.

1           So I wasn't sure why you're talking about
2  possibilities.  Is Mr. Brown a witness in your case?
3           MR. ANDRES:  He's not, Judge.
4           THE COURT:  And is Mr. Gates a witness in the
5  New York case?
6           MR. ANDRES:  Not that I'm aware of.  He's not, Judge.
7           THE COURT:  All right.  So then what's the conflict
8  you want me to address?
9           MR. ANDRES:  It, again, Judge, is a potential
10 conflict.  It's not necessarily one that exists.  But
11 certainly it's one that could develop over time; that is,
12 over the course of either of these cases.  It's possible
13 that either could be called as a witness in either case.
14          So our understanding from the prosecutors in the
15 Southern District case is that there's information that Mr.
16 Gates was involved in the transactions that underlie the --
17 that indictment; that is, he's had money transferred into
18 one of the entities involved with that investigation.  He
19 certainly could be a victim of that scheme, or he could be a
20 co-conspirator.  The government isn't alleging either.  But
21 what we want to avoid is the situation six months down the
22 line where Mr. Gates learns that there's an issue with
23 respect to his representation and it's not something that
24 was addressed ahead of time.
25          So it absolutely only relates to the potential

1  conflict. As we mentioned in our filing, the prosecutors in
2  the Southern District of New York have also filed a letter
3  with Judge Wood, similar to this one, to have a hearing.
4         THE COURT: But, I guess that case is supposed to
5  go to trial in March.
6         MR. ANDRES: Correct.
7         THE COURT: I don't understand why we're talking
8  about somebody who could suddenly turn out to be a witness
9  in a case where they've already had their grand jury
10 investigation, they've already brought an indictment, and
11 they know who they're planning to call as a witness.
12        MR. ANDRES: Judge, because as we read the law, it
13 requires the government to bring forward, or for the Court
14 to address even the potential conflict at the earliest
15 potential stage. So even, again, that it's only a potential
16 conflict, as we read the controlling law, it requires an
17 inquiry to Mr. Gates that he's aware of this even potential
18 conflict.
19        THE COURT: All right. Well, one thing I will ask
20 the government to do, at any time that you understand that
21 there's been any ruling coming out of the New York Court, if
22 you could provide -- you know, docket it, just file a notice
23 that there's been some development, so that we can all be
24 aware of it.
25        And I'll wait and see. I'm not going to ask Mr.

1  Wu to address it now.  I'm sure you want to fully talk to
2  Mr. Mack and figure out what your position is.
3           But, I just really didn't understand what you were
4  trying to tell me.  And you've already clarified a little
5  bit, so that's helpful.
6           I don't have anything else that I need to talk
7  about today.  Is there anything else that the government
8  needs to bring up at this time?
9           MR. ANDRES:  Not from the government, Judge.
10 Thank you.
11          THE COURT:  Anything further for Mr. Gates?
12          MR. WU:  Not for Mr. Gates.
13          THE COURT:  Anything further from Mr. Manafort?
14          MR. DOWNING:  No, Your Honor.
15          THE COURT:  Okay. All right.  Thank you very
16 much, everybody.
17                         *  *  *

CERTIFICATE OF OFFICIAL COURT REPORTER

    I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true and complete transcript of the proceedings to the best of my ability.

    Dated this 22nd day of November, 2017.

/s/_____

Janice E. Dickman, CRR, RMR
Official Court Reporter
Room 6523
333 Constitution Avenue NW
Washington, D.C. 20001