# EXHIBIT A

U.S. Department of Justice

United States Attorney
Southern District of New York

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/22/17
```

November 20, 2017

**BY ECF AND BY E-MAIL**

The Honorable Kimba M. Wood
United States Courthouse
Southern District of New York
500 Pearl Street
New York, New York 10007

**MEMO ENDORSED**

Re:     **United States v. Steven Brown, 16 Cr. 436 (KMW)**

Dear Judge Wood:

The Government writes to make the Court aware of a potential conflict of interest presented by the representation of the above-referenced defendant by Walter Mack, Esq. and to provide the Court information relevant to the exercise of its obligation under United States v. Curcio, 680 F.2d 881 (2d Cir. 1982).

As the Court is aware, the defendant is charged with conspiring to commit wire fraud, wire fraud, and conspiring to commit money laundering between in or about 2012 and in or about June 2016 in connection with a scheme to defraud investors in feature and documentary films. Trial in this action is scheduled to begin on March 5, 2018.

The Government recently learned that Mr. Mack also represents Richard W. Gates III in connection with the criminal case pending against Gates in the United States District Court for the District of Columbia. United States v. Gates, No. 17 Cr. 201 (ABJ). Gates is charged with one count of conspiring to defraud the United States and to commit offenses against the United States, one count of conspiring to commit money laundering, three counts of failing to file reports of foreign bank accounts, one count of being an unregistered agent of a foreign principal, one count of making false and misleading statements in a document filed under the provisions of Foreign Agent Registration Act, and one count of making false statements in a matter within the jurisdiction of the executive branch of the U.S. Government. The charges against Gates, a political consultant and lobbyist, stem from his work on behalf of the Government of the Ukraine and certain Ukrainian political parties between in or about 2006 and in or about 2015.

The conduct for which Gates is charged in the District of Columbia is separate and apart from the charges pending in the instant action. Gates and Brown, however, are believed by the Government to have had a long-term personal and business relationship that creates areas of potential factual overlap between the two cases. Gates and Brown appear to have shared

The Honorable Kimba M. Wood
November 20, 2017
Page 2 of 6

multiple financial and business interests.[1] The Government has also learned that on at least two occasions, Gates, acting at Brown's direction, transferred funds to an account controlled by Brown's co-conspirator in the instant action, James David Williams.[2] These funds were used, in large part, to pay the personal expenses of Williams and Brown. Furthermore, during the time period at issue in the Indictment in this matter, entities associated with Brown and/or with Brown's spouse transferred funds to bank accounts held by entities controlled by Gates. In addition, during the period at issue in the Indictment in this matter, Brown and Williams repeatedly discussed, including in meetings with Gates, the possibility that Gates would arrange for certain Ukrainian clients to invest in a print and advertising fund for film distribution, to be run by Brown and Williams. As set forth in more detail in the Indictment, previous investments of this type procured by Brown and Williams during the relevant period had allegedly been obtained through fraudulent means and had resulted in the misappropriation of investor funds.[3]

The Government does not, at present, have reason to believe that Gates was directly involved in, or was a victim of, the criminal conduct at issue in this case. His level of knowledge about that conduct is, however, difficult to assess at this time, given the extent of his financial and personal relationship with Brown. Similarly, Brown may have knowledge of Gates's activities on behalf of foreign principals or other financial dealings that would be relevant to the case pending in the District of Columbia. It is at least possible that Gates or Brown could become a witness for the Government or that information Mr. Mack learned from Brown or Gates could be relevant to the defense of the other. However unlikely those propositions are, if any of them were to occur, Mr. Mack's obligation to advocate diligently on behalf of his clients would come into conflict with his responsibilities to protect privileged information and to uphold his duties of confidentiality and loyalty.

Accordingly, in an abundance of caution, the Government respectfully requests that the Court conduct a Curcio inquiry to determine whether Brown is fully aware of the risks involved in the representation provided by Mr. Mack, who may, at some point, have divided loyalties, and

---

[1] Gates and Brown are business partners in at least two business entities, GB Consulting, LLC and MAP Global Holdings, LLC, the latter of which is believed to engage in the production of films.

[2] On one such occasion, Bade LLC, an entity controlled by Gates and referenced in the Indictment charging him, transferred $50,000 to an account held in the name of Plainfield Pass, LLC a Williams-controlled entity.

[3] In addition to the contacts described above, the Government understands that Gates has proposed that Marc Brown, Steven Brown's brother, serve as a surety on the bond securing Gates's release. Marc Brown is currently serving as a co-signer on the personal recognizance bond upon which his brother is released in connection with the instant case.

The Honorable Kimba M. Wood
November 20, 2017
Page 3 of 6

determine whether Brown may make a knowing and intelligent waiver of his right to conflict-free representation.[4]

## DISCUSSION

### I. The Curcio Inquiry

The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation. See United States v. Cain, 671 F.3d 271, 293 (2d Cir. 2012). To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to initiate an inquiry to determine the precise nature of the conflict. United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). Because the Sixth Amendment guarantees not only the right to an attorney of undivided loyalty but also, with certain exceptions, to an attorney of one's own choosing, where those rights conflict the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer. Cain, 671 F.3d at 293 (citing Curcio, 694 F.2d at 24-25). Nonetheless, because the Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," Wheat v. United States, 486 U.S. 153, 160 (1988), "there exists a narrow class of so-called per se conflicts that are not susceptible to waiver." Cain, 671 F.3d at 293.

In conducting an inquiry into a conflict, a court must first "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." Levy, 25 F.3d at 153. As the Second Circuit recently explained,

> In satisfying its inquiry obligation, the district court may rely on
> the representations of counsel as to his interest in the case and how
> any potential conflict might be cured. If the court is satisfied at the
> inquiry stage that there is no actual conflict or potential for one to
> develop, its duty ceases. Where the court determines that an actual
> or potential conflict exists but that it would not fundamentally
> impair the lawyer's representation, the district court should address
> the defendant directly and determine whether he wishes to make a
> knowing and intentional waiver of his right to conflict-free counsel
> in conformity with the procedures set out in Curcio. Finally, if the
> initial inquiry establishes that the conflict is such that no rational

---

[4] The Government has conferred with the Office of Special Counsel Robert S. Mueller, III (the "SCO") and understands that the SCO also plans to notify the District Court presiding over the case pending against Gates of the potential conflict posed by the representation of Gates by Mr. Mack.

The Honorable Kimba M. Wood
November 20, 2017
Page 4 of 6

> defendant would knowingly and intelligently desire the conflicted lawyer's representation, the district court must immediately disqualify him.

Cain, 671 F.3d at 293-94.

The Second Circuit has emphasized that the class of cases in which an attorney conflict is truly beyond waiver is a "very narrow" one, United States v. Perez, 325 F.3d 115, 126 (2d Cir. 2003). Nonetheless, because the rights of the defendant and the need to maintain the appearance of fairness demand that any necessary inquiry into possible conflicts of interest occur "sooner rather than later," United States v. Rogers, 209 F.3d 139, 146 (2d Cir. 2000), the district court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163.

As noted, where the district court concludes that an actual or potential conflict exists but that the conflict is not "such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," Cain, 672 F.3d at 294, the conflict is said to be one that may be waived. Conflicts "such as attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." Perez, 325 F.3d at 127. But, because a defendant who chooses to waive his right to conflict-free counsel gives up important rights, the Second Circuit has prescribed in detail what procedures must be followed in a Curcio proceeding to effectuate the waiver, noting that at a Curcio hearing:

> the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

Perez, 325 F.3d at 127.

## II. The Potential Conflict

Under New York's Rules of Professional Conduct, a lawyer is prohibited from representing a client "if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." N.Y. Rules of Prof'l Cond. 1.7(a). This prohibition does not apply if (1) the lawyer reasonably believes he will "be able to provide

The Honorable Kimba M. Wood
November 20, 2017
Page 5 of 6

competent and diligent representation to each affected client;" (2) the representation is not prohibited by law; (3) the represent "does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal;" and (4) each affected client gives informed consent, confirmed in writing. N.Y. Rules of Prof'l Cond. 1.7(b). As the comment to Rule 1.7 explains,

> [d]iffering interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests . . . . The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will adversely affect the lawyer's professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Rule 1.7, cmt. 6.

The law is clear that in most cases conflicts of the type raised here may be waived. See United States v. Fan, 36 F.3d 240, 247-49 (2d Cir. 1994) (upholding a Curcio waiver where co-defendants were represented by the same attorney); United States v. Armedo-Sarmiento, 524 F.2d 591, 593 (2d Cir. 1975) (reversing a disqualification order based on counsel's prior representation of a government witnesses, because "the district court did not give sufficient weight" to the defendant's right to counsel of his choosing).

As set forth above, given Gates's involvement in matters related to those for which Brown is charged criminally, and vice versa, there exists a possibility, however remote, that Mr. Mack's obligation to advocate diligently on behalf of his clients would come into conflict with his responsibilities to protect privileged information and to uphold his duties of confidentiality and loyalty. Accordingly, consistent with the Second Circuit's admonition to address potential conflicts of interest "sooner rather than later," Rogers, 209 F.3d at 146, the Government believes that it is appropriate for the Court to conduct an inquiry to determine whether the potential conflict can be waived and whether Brown is willing to waive it.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court conduct a hearing to determine whether the potential conflict posed by Mr. Mack's representation of both Gates and Brown may be waived and, if it may, that the Court advise

The Honorable Kimba M. Wood
November 20, 2017
Page 6 of 6

Brown of his right to conflict-free representation and inquire as to whether he understands the potential conflict in accordance with the procedures established in Curcio. After advising the defendant of the risks posed by Mr. Mack's representation of him, the Government requests that the Court afford Brown a reasonable time to digest and contemplate those risks, see Curcio, 680 F.2d at 890, and permit the defendant to consult with independent counsel, in the form of the on-duty Criminal Justice Act attorney, regarding the potential conflict.

If Brown subsequently informs the Court that he wishes to proceed with Mr. Mack as his counsel, the Government requests that the Court elicit a narrative response from the defendant designed to ascertain whether he is fully aware of the risks involved in the representation provided by Mr. Mack and determine whether the defendant is making a knowing and intelligent waiver of his right to conflict-free representation.

For the convenience of the Court, the Government has attached to this letter a set of proposed questions to be put to the defendant as part of the Curcio inquiry.

Very truly yours,

JOON H. KIM
Acting United States Attorney

by: /s/ Reilly
Katherine C. Reilly and Noah Solowiejczyk
Assistant United States Attorneys
(212) 637-6521/2473

cc: Walter Mack, Esq. (by ECF)

*Ms. Reilly and Mr. Solowiejczyk shall confer with Counsel for Mr. Brown regarding a date and time for this hearing as soon as possible, and shall call my Deputy, Ms. Torracello to set a date, either in the afternoon of Nov. 22, or during the first week in December.*

SO ORDERED: N.Y., N.Y.
11-21-17

/s/ Kimba M. Wood
KIMBA M. WOOD
U.S.D.J.

**Proposed *Curcio* Examination**
<u>United States</u> v. <u>Steven Brown</u>, 16 Cr. 436 (KMW)

A. **Introductory Questions to Establish Competence**

    1.    How old are you?

    2.    How far did you go in school?

    3.    Are you presently under the care of a doctor for any condition?

    4.    Within the last 24 hours, have you taken any alcohol, drugs, or pills of any kind?

    5.    Is your mind clear today?

    6.    Is anything interfering with your ability to understand what is happening here today?

B. **Potential Conflict of Interest Posed by Mr. Mack's Representation**

    1.    Are you currently represented by Mr. Mack?

    2.    Have you been satisfied with Mr. Mack's representation of you so far in this case?

    3.    Has Mr. Mack informed you that he represents a defendant in another federal criminal case, Richard Gates?

    4.    How long have you been aware of this issue? How much time have you spent discussing this issue with Mr. Mack?

    5.    Do you understand that Mr. Mack is required by his duty of loyalty to serve the best interests of Mr. Gates, as well as your best interests?

    6.    Do you understand that Mr. Mack cannot use any information he obtained from Mr. Gates while representing you in this matter?

    7.    More specifically, do you understand that if you proceed to trial, Mr. Mack will not be able to use any information he obtained from Mr. Gates in cross-examining any witnesses called by the Government?

    8.    Additionally, if Mr. Gates were to become a witness for the government in this case, and if he were called to testify against you, Mr. Mack will be limited in his ability to ask questions on cross-examination that could be damaging to Mr. Gates's credibility and favorable to your defense?

1

9. Do you understand that if Mr. Gates is called by the Government to testify at a trial in your case, you might have to retain another attorney not associated with Mr. Mack's firm to cross-examine Mr. Gates?

10. Do you understand that Mr. Mack might be prohibited from asking Mr. Gates questions about facts that he learned in confidence while representing Mr. Gates?

11. Do you understand that if you continue to be represented by Mr. Mack, he cannot advise or help you in doing anything that would hurt Mr. Gates, even if it is in your best interest to do so?

12. Do you understand that Mr. Mack cannot help you in providing assistance to the Government that might hurt Mr. Gates, even if it turns out that doing so might be in your best interest?

13. Do you understand that Mr. Mack may refrain from making certain arguments regarding the evidence in this case, even though such arguments may be beneficial to you, because of his representation of Mr. Gates?

14. Do you understand that the greatest danger to you is that there may be a way in which Mr. Mack's representation of you will be impaired by his representation of Mr. Gates that is not currently foreseeable?

15. Do you understand that the potential conflict already has existed throughout the time that Mr. Mack has represented you?

16. Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

C. **The Right to Conflict-Free Representation**

1. Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests?

2. In other words, do you understand that you are entitled to attorneys who have only your interests in mind, and not the interests of any other client?

3. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

4. Have you consulted with any attorneys other than Mr. Mack about the dangers to you of this potential conflict of interest?

2

    5.    Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

    6.    Have you consulted with independent counsel about the conflict or potential conflict of interest that I have described to you today? Has counsel fully advised you about the situation? Do you wish to receive additional time to consult with independent counsel?

### D. Continuation of Curcio Hearing (Following Decision to Consult/Not Consult with Independent Counsel)

1. Have you taken the opportunity to discuss with an attorney the conflict-of-interest matters I discussed with you in court previously?

    a. IF YES:

        i. What attorney did you speak with?

        ii. Did this attorney thoroughly explain to you potential effects or problems associated with Mr. Mack's restrictions on his representation of you?

        iii. Did this attorney answer all of your questions?

        iv. Are you satisfied with the representation that this attorney gave you?

    b. IF NO:

        i. Do you feel that it is unnecessary for you to consult with an attorney other than Mr. Mack about these matters, although you have a right to do so?

        ii. Why?

        iii. You understand that by not speaking with an attorney now you are waiving the right to later argue that you did not receive legal advice independent of that provided to you by Mr. Mack?

        iv. Do you still want to go forward?

2. After considering all that I have said today about the ways in which Mr. Mack's representation of Mr. Gates may adversely affect your defense, do you believe that it is in your best interest to continue with Mr. Mack as your attorney? Is that your wish?

3. Do you understand that by choosing to continue with Mr. Mack as your attorney, you are waiving your right to be represented solely by an attorney who has no potential conflict of interest?

3

4. Do you understand that, if you proceed with Mr. Mack as your attorney, you will not be able to claim later on that you were prejudiced in any way because of Mr. Mack's restrictions on his representation of you?

5. Are you knowingly and voluntarily waiving your right to conflict-free representation?

6. Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of Mr. Mack's representation of Mr. Gates, you were denied effective assistance of counsel by Mr. Mack?

7. Is there anything that I have said that you wish to have explained further?

4