# EXHIBIT A

HC4PBROC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                     16 CR 436 (KMW)

STEVEN BROWN,

          Defendant.

------------------------------x

                                 New York, N.Y.
                                 December 4, 2017
                                 11:50 a.m.

Before:

                    HON. KIMBA M. WOOD,

                                 District Judge

                       APPEARANCES

JOON H. KIM,
     Acting United States Attorney for the
     Southern District of New York
KATHERINE REILLY
NOAH SOLOWIEJCZYK
     Assistant United States Attorneys

WALTER S. MACK, JR.
DAVID RIVERA
     Attorneys for Defendant

HC4PBROC

1              (In open court)

2              (Case called)

3              THE COURT:  Good morning.  Please have a seat.

4              MS. REILLY:  Good morning, your Honor.  Catherine

5      Reilly and Noah Solowiejczyk for the government.

6              THE COURT:  Good morning.

7              MR. MACK:  Good morning, your Honor.  Walter Mack and

8      David Rivera, with Steven Brown, who is sitting to my left.

9              THE COURT:  Okay.  Thank you.  Mr. Mack, I have your

10     letter dated November 30th, actually, affirmation, and I

11     understand the position you're taking.  It would not take much

12     more time for me to go through the usual Curcio questions, and

13     I'm going to do it, against the infinitesimal chance that there

14     would emerge a conflict sometime down the road.

15             MR. MACK:  I understand that, your Honor.  I had one

16     thing I did want to raise, if possible, beforehand.  I think

17     you could tell from my affirmation that I anticipated that that

18     was likely, and I recognize that you want to avoid any risk

19     going forward.  But I do want to at least indicate what --

20     there has been a tremendous media storm as a result of a letter

21     the government sent, which sets forth information in great

22     detail about certain counsel and, basically, data, which we're

23     quite confident that if it came anywhere, it came from

24     Mr. Williams who we cannot respond to in any way, nor do we

25     wish to today.

1              But the reality is that the government may be sharing

2       with the SCO.  We don't know what Mr. Williams' information is.

3       We have gone, as best we can, trying to anticipate what the

4       concerns are, and those are reflected in the affirmation.

5              It seems unfair to us when we're under a protective

6       order that we cannot discuss information that we're getting in

7       production, which at least we would have thought about

8       responding to, and yet, Mr. Williams must be providing, or

9       somebody is providing information about specific accounts,

10      specific businesses, things of that nature, and we cannot

11      respond.

12             Had we thought about responding, because we're under a

13      protective order, but having had a lot of experience with

14      Curcio hearings in my years here, usually Curcio hearings are a

15      matter of very short, hey, there could be a conflict, this is

16      the general nature of it, and the Court decides what to do.

17      Here, we're getting very specific information in footnotes

18      about accounts and what have you probably from Mr. Williams

19      which we cannot respond to because of the protective order in

20      the information that we're getting.

21             I don't think we would respond, to be perfectly

22      honest, but it seems somewhat unfair to us, and I know

23      Mr. Brown, who's flown here last night, he was here on the

24      redeye, basically to be hammered.  He's had many press

25      inquiries.  We've had many press inquiries.  I have imposed my

HC4PBROC

 1   own gag order on him.  We are not commenting on the press at

 2   any time.

 3        Judge Jackson in DC has imposed a gag order on us, and

 4   I actually -- we welcome the Court's inquiry here.  It's a long

 5   way of saying, but it seems somewhat unfair that we are

 6   prevented from saying anything, and we don't want to talk to

 7   the press --

 8        THE COURT:  May I take a look at the document you're

 9   looking at?

10        MR. MACK:  I'm looking at the letter to you of

11   November 20, and it was filed on ECF.  It's -- first of all, we

12   get Mark Brown, Steven's brother, who is trying to do a good

13   deed for Mr. Gates, hammered in a footnote and the SCO.  I'd

14   rather hand it up.  I have a marked copy.  If that's available,

15   it's dated November 20, and it's document 113 in ECF.

16        THE COURT:  Oh, I see.  You're referring to the

17   Curcio?

18        MR. MACK:  The Curcio letter.

19        THE COURT:  Okay.  Let me just review it quickly.  It

20   seems to me that the level of detail in the government's letter

21   is of use to the Court to explain to me why I should go through

22   the -- I can't find the right adjective for what I think of

23   Curcio hearings, but I think they are generally toothless.  So

24   it tells me why the government believes there is potential for

25   overlap.  You think this was just intended for the press?

1          MR. MACK:  I don't want to accuse the government of

2     that, your Honor.  I mean, my reality is that this could have

3     been done in a lot less way that -- I can tell you I've had at

4     least 20 calls from press asking.  There's no way that we can

5     comment in this case without being accused of violating Judge

6     Jackson's order in DC one way or the other.

7          And it just seems to me that we are very -- given the

8     attention of the media to these two cases, I would generally

9     ask that if there were things that could -- and this certainly

10    has -- that there are ways to accomplish the Court's goals here

11    without further inciting the media's attention, and this

12    certainly has.

13         Mr. Brown has been told by me, and to his great

14    credit, he is not commenting.  We've imposed a gag order here,

15    but basically it is a situation, there's a lot of attention now

16    focused on him that never was before, with respect to the

17    Ukraine.  I mean, we don't know what the government is going to

18    do.  I mean, in both cases we've been told that there may be a

19    superseder.  We don't know what's happening.  We're in a

20    situation that is very difficult under the current

21    circumstances to articulate exactly what's the conflict that

22    we're being asked to deal with.

23         THE COURT:  Well, as you know, every Curcio script

24    explains that man can't possibly now know all possible

25    conflicts down the road.

HC4PBROC

1          MR. MACK:  And that's why we -- Mr. Brown has been

2     counseled as he has, and is prepared today to respond to the

3     Court's questions.

4          THE COURT:  Okay.  Does the government want to be

5     heard at all?

6          MS. REILLY:  No.  Thank you, your Honor.

7          THE COURT:  Okay.  I'll go through the questions.

8          Mr. Brown, could you please stand and raise your right

9     hand.

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Do you solemnly swear that the answers you

12     give to my questions today will be the truth, the whole truth

13     and nothing but the truth, so help you God?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  How old are you?

16          THE DEFENDANT:  I'm 47.  I'll be 48 next month.

17          THE COURT:  Okay.

18          THE DEFENDANT:  Except I'll -- I'm 47.  I'll be 48 in

19     January.

20          THE COURT:  It becomes harder to remember as time

21     goes, I know.  How far did you go in school?

22          THE DEFENDANT:  I was a licensed school teacher in the

23     State of Illinois.

24          THE COURT:  Are you currently under the care of a

25     doctor for any condition?

HC4PBROC

1          THE DEFENDANT:  Yes.

2          THE COURT:  In the past 24 hours, have you had any

3   alcohol or taken any drugs or pills of any kind?

4          THE DEFENDANT:  I'm required, your Honor, to take

5   unfortunately -- unfortunately, I'm required to take Ativan in

6   the morning.

7          THE COURT:  Okay.  Is your mind clear today?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Does that medicine interfere with your

10  ability to understand what's happening here?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  Are you currently represented by Mr. Mack?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Have you been satisfied with his

15  representation of you so far in this case?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Has he informed you that he represents a

18  defendant in another criminal case, Richard Gates?

19         THE DEFENDANT:  Yes.  He informed me, and upon his

20  informing me, he asked me to seek an independent lawyer's

21  advice and recommendation, which I sought about three or four

22  independent people's advice.

23         THE COURT:  You may find it easier to sit.

24         THE DEFENDANT:  May I?

25         THE COURT:  You may sit, and bring the microphone

1    under your chin.  You get feedback if you're too close to it.

2              How long have you been aware of this issue, this

3    possible conflict?

4              THE DEFENDANT:  I would say from the day Mr. Mack

5    contacted me that the government was filing a motion, and I

6    didn't -- in my own view, didn't see a conflict.

7              THE COURT:  Okay.  If you could project your voice, it

8    will be easier for the court reporter.

9              THE DEFENDANT:  I apologize.  Is that better?

10             THE COURT:  Yes, much.

11             THE DEFENDANT:  Okay.  From the day the government

12   advised Mr. Mack that they were filing a motion, he contacted

13   me and I never saw a conflict, and I have disclosed to Mr. Mack

14   that I did seek independent counsel.  I also disclosed to

15   Mr. Mack that after speaking with him, I would be happy to sign

16   any waiver of conflict, although nobody I spoke to could see a

17   conflict.

18             THE COURT:  One of the reasons for going through this

19   exercise, as I just mentioned to Mr. Mack, which already told

20   you, I'm sure, the reason for this, even though you've had

21   advice from more than one lawyer about a potential conflict,

22   it's impossible to know today exactly where an investigation

23   will lead and turn up.  Unless you're omniscient, you know,

24   it's not possible, and that's my concern.  So allow me.

25             THE DEFENDANT:  Yes, ma'am.

HC4PBROC

1      THE COURT:  How much time have you spent discussing

2  this issue with Mr. Mack?

3      THE DEFENDANT:  No less than six hours.

4      THE COURT:  Do you understand that he is required, by

5  his duty of loyalty, to serve the best interests of Mr. Gates,

6  as well as your best interests?

7      THE DEFENDANT:  Yes, your Honor.

8      THE COURT:  Do you understand that Mr. Mack cannot use

9  any information he obtained from Mr. Gates while representing

10  you in this matter?  I'll give you an example.  If Mr. Gates

11  had some information that would be useful in your defense, and

12  if he stated those facts to Mr. Mack, Mr. Mack would not be

13  allowed to use that in your case.

14      THE DEFENDANT:  Yes.  I understand, your Honor.

15      THE COURT:  More specifically, do you understand that

16  if you proceed to trial, Mr. Mack will not be able to use any

17  information he obtained from Mr. Gates in cross-examining any

18  witnesses called by the government?

19      THE DEFENDANT:  Yes.  I understand, your Honor.

20      THE COURT:  Additionally, if Mr. Gates were to become

21  a witness for the government in this case, and if he were

22  called to testify against you, Mr. Mack would be limited in his

23  ability to ask questions on cross-examination that could be

24  damaging to Mr. Gates' credibility and favorable to your

25  defense.  This is just another example.

HC4PBROC

1      THE DEFENDANT:  Yes.  I understand that.

2      THE COURT:  Do you understand that if Mr. Gates is

3  called by the government to testify at a trial in your case,

4  you might have to retain another attorney, not associated with

5  Mr. Mack's firm, to cross-examine Mr. Gates?

6      THE DEFENDANT:  Yes.  I understand, your Honor.

7      THE COURT:  Do you understand that Mr. Mack might be

8  prohibited from asking Mr. Gates questions about facts that he

9  learned in confidence while representing Mr. Gates?

10      THE DEFENDANT:  Yes.  I understand, your Honor.

11      THE COURT:  Do you understand that if you continue to

12  be represented by Mr. Mack, he cannot advise or help you in

13  doing anything that would hurt Mr. Gates, even if it is in your

14  best interest to do so?

15      THE DEFENDANT:  I understand, your Honor.

16      THE COURT:  Do you understand that Mr. Mack cannot

17  help you in providing assistance to the government that might

18  hurt Mr. Gates, even if it turns out that doing so might be in

19  your best interest?

20      THE DEFENDANT:  Yes.  I understand, your Honor.

21      THE COURT:  Do you understand that Mr. Mack may

22  refrain from making certain arguments regarding the evidence in

23  this case, even though such arguments may be beneficial to you,

24  because of his representation of Mr. Gates?

25      THE DEFENDANT:  Yes.  I understand that.

HC4PBROC

1          THE COURT:  Do you understand that the greatest danger

2     to you is that there may be a way in which Mr. Mack's

3     representation of you will be impaired by his representation of

4     Mr. Gates but that that is not currently foreseeable?

5          THE DEFENDANT:  Yes.  I understand, your Honor.

6          THE COURT:  Do you understand that the potential

7     conflict already has existed throughout the time that Mr. Mack

8     has represented you?  I call it "potential."

9          THE DEFENDANT:  Yes.  I understand, your Honor.

10          THE COURT:  Could you tell me in your own words what

11     is your understanding of the potential conflicts of interest

12     arising in this situation?

13          THE DEFENDANT:  Your Honor, from my understanding, I

14     don't view a conflict of interest, but if a random conflict

15     we're to exist, I've advised Mr. Mack, after speaking with

16     independent counsel, that I'll be pleased to sign a waiver of

17     conflict.

18          THE COURT:  I would urge you not to feel bound by

19     that.  You shouldn't foreclose any options.

20          Do you understand that in every criminal case,

21     including this one, the defendant is entitled to assistance of

22     counsel whose loyalty to him is undivided, who is not subject

23     to any factor that might in any way intrude upon an attorney's

24     loyalty to interests?

25          THE DEFENDANT:  Yes.  I understand that.

HC4PBROC

1           THE COURT:  In other words, do you understand that you

2      are entitled to attorneys who have only your interest in mind,

3      not the interest of any other client?

4           THE DEFENDANT:  Yes.  I do understand that.

5           THE COURT:  Have you received any inducements,

6      promises or threats with regard to your choice of counsel in

7      your case?

8           THE DEFENDANT:  Absolutely not, your Honor.

9           THE COURT:  You've indicated that you've consulted

10     with attorneys other than Mr. Mack about the dangers to you of

11     this potential conflict of interest; is that correct?

12          THE DEFENDANT:  That is accurate, your Honor.

13          THE COURT:  All right.  Are they attorneys from law

14     firms that are not connected to Mr. Mack?

15          THE DEFENDANT:  I'm sorry, somebody coughed.

16          THE COURT:  Are those attorneys with whom you

17     consulted, are any of them in any partnership or law firm with

18     Mr. Mack?

19          THE DEFENDANT:  There's no affiliation to Mr. Mack.

20          THE COURT:  Okay.  I know you understand this, but do

21     you understand that you have a right to consult with an

22     attorney free from any conflict of interest about this issue,

23     and that I will give you an opportunity to do that, if you'd

24     like to do that, from here on out?

25          THE DEFENDANT:  Yes.  I understand, your Honor.

1            THE COURT:  Okay.  Do you wish to have any additional

2    time to consult with independent counsel?

3            THE DEFENDANT:  No.  Thank you, your Honor.

4            THE COURT:  Okay.  What attorneys did you speak with,

5    the independent ones?

6            THE DEFENDANT:  I'm not sure --

7            MR. MACK:  Your Honor, I actually discussed this issue

8    with Mr. Brown before coming here, and one thing is absolutely

9    certain, that every name that surfaces in the course of either

10   of these cases, that individual -- I can tell you from the

11   Gates case, a number of people who wanted to help Mr. Gates,

12   they were surrounded by press.  So I don't think he has any

13   problem doing so, but we would like to try to avoid those names

14   being presented far and wide.

15           THE COURT:  I'll skip that question.

16           MR. MACK:  Thank you, your Honor.

17           THE COURT:  Did the attorneys with whom you talked,

18   the independent ones, did they thoroughly explain to you the

19   potential effects or problems associated with Mr. Mack's

20   restrictions on his representation of you?

21           THE DEFENDANT:  They thoroughly went through it with

22   me.

23           THE COURT:  May I ask you, are you hard of hearing?

24           THE DEFENDANT:  Yes.

25           THE COURT:  In your future appearances, we will have a

1    headset that will amplify what is said in court, making it all

2    easier for you.

3              THE DEFENDANT:  Thank you, your Honor.

4              THE COURT:  If you aren't given a headset when you

5    walk in, please mention it to my deputy.

6              THE DEFENDANT:  Thank you, your Honor.

7              THE COURT:  Are you satisfied with the representation

8    that the independent attorneys gave you?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  After considering everything I've said

11   today about the ways in which Mr. Mack's representation of

12   Mr. Gates may adversely effect your defense, do you believe

13   that it is in your best interests to continue with Mr. Mack as

14   your attorney?

15             THE DEFENDANT:  Yes.  I do, your Honor.

16             THE COURT:  And is that your wish?

17             THE DEFENDANT:  Yes.  It is, your Honor.

18             THE COURT:  Do you understand that by choosing to

19   continue with Mr. Mack as your attorney, you are waiving your

20   right to be represented by an attorney who has no potential

21   conflict of interest?

22             THE DEFENDANT:  Yes.  I understand that, your Honor.

23             THE COURT:  Do you understand that if you proceed with

24   Mr. Mack as your attorney, you will not be able to claim later

25   on that you were prejudiced in any way because of his

HC4PBROC

1    restrictions of his representation on you?

2              THE DEFENDANT:  Yes.  I understand that, your Honor.

3              THE COURT:  Are you knowingly and voluntarily waiving

4    your right to conflict-free representation?

5              THE DEFENDANT:  Yes.  I do, your Honor.

6              THE COURT:  Do you waive any post-conviction argument,

7    on appeal or otherwise, that by virtue of Mr. Mack's

8    representation of Mr. Gates, you were denied effective

9    assistance of counsel by Mr. Mack?

10             THE DEFENDANT:  Yes.  I understand that, your Honor.

11             THE COURT:  Is there anything I've said that you would

12   like to have me explain further?

13             THE DEFENDANT:  No.  Thank you, your Honor.

14             THE COURT:  Okay.  Would anyone like to raise anything

15   else?

16             MS. REILLY:  Nothing from the government, your Honor.

17             THE COURT:  All right.  I find that Mr. Brown has

18   knowingly waived his right to completely independent counsel.

19             Thank you very much.  We're adjourned.

20             (Adjourned)

21

22

23

24

25