UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD W. GATES III, | ) | Crim. No. 17-201-2 (ABJ) |
| | ) | |
| Defendant. | ) | FILED UNDER SEAL |

## RESPONSE TO COURT'S DECEMBER 21, 2017 ORDER

This response is submitted in connection with the Court's Minute Order, dated December 21, 2017 ("December 21 Order"), which requires that Mr. Gates provide certain additional information regarding the proposed relatives who are being proffered as sureties and information on the impact of any consequent taxes and penalties on Mr. Gates's 529 qualified tuition plans and individual retirement accounts. Mr. Gates addresses each of the Court's questions in order below.

**1. Proposed Sureties Under 18 U.S.C. § 3142(c)(1)(B)(xii)**

In his motion to modify release conditions,[1] Mr. Gates advised that ███████, ███████, and ███████ agreed to co-sign the bond and thereby pledge themselves as sureties on the remainder of the bail not secured by the pledged assets under 18 U.S.C. § 3142(c)(1)(B)(xi). The total pledged assets under 18 U.S.C. § 3142(c)(1)(B)(xi) totaled ███████, ███████. To secure this remainder, the above individuals were proposed as sureties under 18 U.S.C. § 3142(c)(1)(B)(xii). As sureties, these individuals would forfeit assets that had not been otherwise pledged under 18

---

[1] *See* ECF # 89-1 (sealed unredacted motion), 89-2 (sealed Exhibit 1 thereto), and 89-3 (Sealed Exhibit 2 thereto). A public redacted version of the motion was filed on December 15, 2017. *See* ECF # 96. Note that the December 21 Order refers to Mr. Gates's motion to modify release conditions as ECF # 98 but the docket does not have an entry for ECF # 98.

U.S.C. § 3142(c)(1)(B)(xi). In his motion to modify release conditions, Mr. Gates provided a net worth statement for the family friend.

## 2. Requested Information Regarding Proposed Sureties

In its December 21 Order, the Court correctly noted that in his motion to modify conditions of release, Mr. Gates identified certain ▮▮▮ as potential sureties under 18 U.S.C. § 3142(c)(1)(B)(xii). The Court stated that Mr. Gates "must inform the Court whether these individuals are simply being proposed in connection with the forfeiture of the properties [they are willing to post as security under subsection (xi)], or if he is asking the Court to consider them as sureties under subsection (xii)."

As stated in his motion to modify release conditions, Mr. Gates's ▮▮▮ and ▮▮▮ ▮▮▮ had agreed to pledge certain real estate that they each own under 18 U.S.C. § 3142(c)(1)(B)(xi). Mr. Gates had also proposed that his ▮▮▮ serve as sureties to secure his bond, with assets apart from the pledged real estate. Mr. Gates withdraws the proposal that his ▮▮▮ serve as sureties at this time.[2] As such, Mr. Gates informs the Court that his ▮▮▮ and ▮▮▮ are pledging real estate under (xi) but are not serving as sureties under (xii).

The Court further stated that if the ▮▮▮ were being proffered as sureties, Mr. Gates must inform the Court "when he intends to supplement his submission with the necessary 'information regarding the value of the assets and liabilities of [a] surety… other than approved surety and the nature and extent of encumbrances against the surety[']s property' so that the Court can determine whether the surety has 'a net worth [of]. . . sufficient unencumbered value to pay the amount of the bail bond" as required by the statute.

---

[2] Mr. Gates's ▮▮▮ is not pledging real estate but is serving as a surety under (xii).

At this time, the only relative who is being proffered as a surety under (xii) is Mr. Gates's ███████. With respect to his ███████, a financial statement was provided to the Court under seal on December 22, 2017,³ after the December 21 Order issued. As such, information regarding the value of the assets and liabilities of each of his proposed sureties, i.e., his ███████ and his ███████, under 18 U.S.C. § 3142(c)(1)(B)(xii) is now complete.

As set forth in his motion to modify release conditions, adjusted to reflect the net worth in Mr. Gates's ███████'s financial statement, the total amount of Mr. Gates proposed package is $███████.

### 3. 529 Qualified Tuition Plans and Individual Retirement Accounts

As a final matter, the Court requested that Mr. Gates "address the question of whether he is legally permitted to agree to forfeit assets held in 529 plans and individual retirement accounts, and if so, what effect any consequent taxes and penalties would have on the value of those accounts."

Defendant Gates submits that it is legally permitted to forfeit assets held in individual retirement accounts and 529 qualified tuition (education) accounts proposed as part of his bail package. Under 26 U.S.C. § 529, governing the Qualified Tuition Program, and 26 U.S.C. § 401, governing Qualified Pension, Profit-sharing and Stock Bonus Plans, these accounts are those of the defendant (and his wife) and can be pledged as collateral for his bond subject to the rules and regulations that govern these accounts.⁴ The Internal Revenue Services does not

---

³ *See* Mr. Gates's Reply to Government's Response to Defendant Gates's Motion to Modify Conditions of Release, and Limited Motion for Reconsideration of Court's Sealed Order of December 20, 2017 regarding Defendant Gates's Motion to Modify Release Conditions for Limited Purposes to Attend Holiday Events, ECF # 110-2 (filed under seal), and Exhibit 1 thereto, ECF #110-3 (filed under seal).

⁴ This discussion is equally applicable to the 529 qualified tuition accounts and individual retirement account that are part of the assets of Mr. Gates's proposed sureties.

3

evaluate or distinguish how 529 accounts and retirement funds are used, but only requires that they conform to the law and that any applicable penalties are applied for certain withdrawal and distributions.

While these accounts are Mr. Gates's assets, they have certain tax attributions so long as they are spent for education costs, in the case of the 529 plans, or retirement benefits after the age of 59 1/2, in the case of the retirement plans. Should the assets be used for other reasons or prematurely, there are penalties and taxes that may be owed.

In the case of Mr. Gates, if the bond conditions were violated and the 529 plans pledged as collateral, the earnings portion of the distribution (any amount in excess of the initial contribution) will be taxable in the year of the distribution and there will be a 10% federal penalty on the earnings portion of the distribution. For example, if Mr. Gates initially contributed $1,000 to a 529 plan and the plan now has assets of $1,500, the $500 earning will be subject to federal income taxes and a 10% penalty ($50).

Again, in the extremely unlikely case that the bond conditions were violated and the retirement accounts were pledged as collateral, if liquidated prior to retirement, the entirety of the distribution would be subject to income tax plus a 10% penalty. For example, if Mr. Gates contributed $1,000 to a retirement account and the account was liquidated before retirement, the entire $1,000 would be subject to income tax plus there would be a 10% penalty ($100).

There is an argument that must be presented that the taxed and penalty portions of the 529 and retirement accounts only impacts Mr. Gates and not the Government since it would be the beneficiary of the 529 and retirement accounts in the case that the bond is forfeited. Therefore, the value of the 529 and retirement accounts while devalued for Mr. Gates, are in fact not devalued for the Government since it is receiving the penalties and taxes from liquidating the

4

funds. For example, if Mr. Gates has a retirement fund worth $50,000 and violates his bond, the Government would liquidate that fund. While normally Mr. Gates would pay a 10% penalty and be taxed at a rate of at least 25% of the fund, the Government receives both the taxes and the early liquidation penalty and would therefore receive the entire value of the $50,000 fund while Mr. Gates would receive only $32,500 if he were to liquidate for other reasons. Therefore, assets tied to 529 and retirement accounts should not be subject to any diminished value as part of Mr. Gates's bail package since the Government is receiving the full benefit of all taxes and penalties associated with the funds.

In any case, even if the Court were to discount the value of the 529 account and individual retirement account assets by the 10% penalty, Mr. Gates estimates that the proposed bail package would be devalued in the range of $▮▮▮▮-$▮▮▮▮, resulting in a proposed bail package of approximately $▮▮▮▮▮▮▮▮▮▮, which is well above the $5 million bond. It must also be noted that taxation is a year-end event not a liquidation event and would not further impact his proposed bail package proffer.

## CONCLUSION

Mr. Gates respectfully submits that this response satisfies the Court's December 21, 2017 Order.

                                                        /s/Shanlon Wu  
                                                      Shanlon Wu  
                                                      D.C. Bar No. 422910  
                                                     Wu, Grohovsky & Whipple, PLLC  
                                                     Ronald Reagan Building and International Trade Center  
                                                     1300 Pennsylvania Avenue, NW, Suite 700  
                                                     Washington, DC 20004  
                                                     swu@dcwhitecollar.com  
                                                     202-204-3053 (Telephone)  
                                                     202-747-7518 (Facsimile)

Walter Mack
Admitted Pro Hac Vice
Doar Rieck Kaley & Mack
217 Broadway, Suite 707
New York, NY 10007-2911
212-619-3730 (Telephone)
212-962-5037 (Facsimile)

Annemarie McAvoy
Admitted Pro Hac Vice
McAvoy Consulting, LLC
mcavoypc@rocketmail.com
917-750-8131 (Telephone)

*Attorneys for Richard W. Gates III*