UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JAN - 4 2018

Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA, )
)
v. )
) Crim. Action No. 17-0201-2 (ABJ)
RICHARD W. GATES III. )
)
)
Defendant. )
)

## ORDER

After consideration of defendant Gates's motion to modify conditions of release, [Dkt. ## 96, 98], the government's response to defendant's motion [Dkt. ## 109, 124], defendant Gates's reply [Dkt. ## 119, 125], as well as defendant's supplemental response to the Court's order [Dkt. ## 116, 118], the motion is hereby granted in part and denied in part.

Defendant has promised to forfeit $5,000,000.00 if he fails to appear for court proceedings, or fails to surrender to serve any sentence that the Court imposes if he is convicted. To date, that promise has been unsecured, and on November 6, 2017, the Court found, for reasons stated on the record at a hearing held that day, that release on personal recognizance with an unsecured appearance bond would not reasonably assure the appearance of defendant as required. Under those circumstances, the Bail Reform Act, 18 U.S.C. § 3142(c), requires the Court to order defendant's pretrial release:

    (A) subject to the condition that [he] not commit a Federal, State, or local crime . . . and

    (B) subject to the least restrictive further condition, or combination of conditions, that [it] determines will reasonably assure [his] appearance.

18 U.S.C. § 3142(c)(1)(A)–(B).

In his motion, which was supplemented by an additional filing in response to questions posed by the Court on December 21, *see* Resp. to Ct.'s Order [Dkt. ## 116, 118] ("Resp. to Ct.'s Order"), defendant seeks to secure his promise to appear with real property and to pledge certain other assets, and he identifies an individual, ▇▇▇▇▇▇▇▇, who has agreed to serve as a surety. Def.'s Mot. to Modify Conditions of Release [Dkt. ## 96, 98] ("Def.'s Mot.").[1] It does not appear that the real property and assets defendant has offered as security have a combined total value of $5,000,000.00, and defendant has not provided information sufficient to assure the Court that the surety has the means to satisfy the entire forfeiture amount either. But considering all of the factors set forth in section 3142(g), including defendant's strong family ties to the region, the fact that defendant remained in the country while the case was under investigation and turned himself in to face these charges, and the fact that the United States has not objected to the identification of ▇▇ ▇▇▇▇▇ as a surety or informed the Court that defendant Gates has other assets at his disposal, the Court concludes that the combination of conditions set forth below is sufficient, but not more restrictive than necessary, to ensure defendant's appearance.

Therefore, pursuant to section 3142(c)(1)(B), defendant will be released under the following conditions that the Court has determined are necessary:

---

[1] In his motion, defendant proposed that family members ▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇ would also serve as sureties, *see* Def.'s Mot., but he failed to provide any information to show that they "have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond" as required by the Bail Reform Act. *See* 18 U.S.C. § 3142(c)(1)(B)(xii); *see also id.* (The defendant "shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property"). In response to the Court's minute order of December 21, 2017, defendant revised his original proposal and explained that while ▇▇▇▇▇▇▇▇ were the owners of property to be pledged as security under section 3142(c)(1)(B)(xi), they were not being proffered as sureties under subsection (xii). *See* Resp. to Ct.'s Order at 1-2.

(A) Defendant must not commit any federal, state, or local crime.

(B) Pursuant to section 3142(c)(1)(B)(xi), defendant must execute an agreement to forfeit the following properties upon failing to appear as required:

 (i) The real property owned by Richard W. Gates III and ▓▓▓▓ on Virginia Avenue, Richmond, VA ▓▓;

 (ii) The real property owned by ▓▓▓▓ and ▓▓▓▓ on ▓▓▓▓ Lane, Prince George, VA ▓▓;

 (iii) The real property owned by ▓▓▓▓ on ▓▓▓▓ Road, Midlothian, VA ▓▓;

 (iv) The Richard W. Gates III Whole Life Insurance Policy;

 (v) The four ▓▓▓▓ accounts owned by Richard W. Gates III for the benefit of ▓▓▓▓;

 (vi) The ▓▓▓▓ retirement and non-retirement accounts in the name of Richard W. Gates III and ▓▓▓▓;

 (vii) The ▓▓▓▓ Individual Retirement Account in the name of Richard W. Gates III; and

 (viii) The ▓▓▓▓ investment account in the name of Richard W. Gates III.[2]

(C) The co-owners of each property or account listed above, and any adult beneficiary of an IRA account must also each execute an agreement to forfeit the property upon defendant's failure to appear.

(D) Defendant and the co-owners must agree in writing not to transfer or further encumber any of the properties, and to remain current on mortgage and real estate tax payments.

(E) In addition, pursuant to section 3142(c)(1)(B)(xii), ▓▓▓▓, the proposed surety, must execute an agreement to serve as a surety and forfeit up to $5,000,000.00 upon defendant's failure to appear.

If defendant fails to appear, all of the assets listed in paragraphs (B)(i) through (B)(viii) above will be forfeited. In the event the amount obtained as a result of forfeiture proceedings does not equal $5,000,000.00, the surety will be required to forfeit the difference. The necessary sum

---

[2] The complete address of each house to be forfeited and the account numbers for the insurance policy and other financial accounts appear in the sealed exhibit to the motion. *See* Ex. 1 to Def.'s Mot. [Dkt. # 98-1].

may be generated through a combination of the liquidation of any assets and/or the sale of the Pinnacle Drive property.

Defendant shall notify the Court once all of the necessary documents have been executed and docketed in this case. At that time, the Court will issue a separate order releasing defendant from the condition of permanent home confinement in Richmond, Virginia, and he will be further ordered to comply with the following conditions, to be monitored by the Pretrial Services Agency of the Eastern District of Virginia, thereafter:

1. Defendant must reside at the Virginia Avenue house in Richmond, Virginia.
2. Defendant must abide by a curfew of 11:00 p.m. until 7:00 a.m.
3. Defendant must remain within the geographic area Richmond, Virginia.
4. Defendant may travel to and from the District of Columbia for court appearances and for meetings with counsel without seeking permission in advance from the Court, provided that he informs Pretrial Services of the dates of any travel and supplies the agency with his detailed itinerary three business days before any trip.
5. Defendant must obtain permission of the Court for any other domestic travel, including travel to the District of Columbia for any other purpose. Any motion seeking permission must be filed one week before the proposed trip and must explain why any proposed meeting cannot take place in Richmond or through the use of phone or internet.
6. Defendant may not leave the United States, and he may not apply for any additional passports or visas.
7. Defendant's wife shall surrender any and all current passports to the Pretrial Services Agency.
8. Defendant must stay away from transportation facilities, including airports, train stations, bus stations, and private airports, other than for trips described in paragraphs 4 and 5.

9. Defendant's compliance with these conditions will be subject to electronic GPS monitoring.

10. Defendant must report in person once a week to the Pretrial Services Agency.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE: January 3, 2018