# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
| PAUL J. MANAFORT, JR., | ) |
|  | ) |
| *Defendant.* | ) |

Criminal No. 1:17-cr-00201-ABJ

Judge Amy Berman Jackson

**ORAL ARGUMENT REQUESTED**

## DEFENDANT'S REPLY IN SUPPORT OF HIS
## MOTION TO DISMISS THE SUPERSEDING INDICTMENT

Kevin M. Downing
(D.C. Bar #1013894)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
(202) 754-1992
kevindowning@kdowninglaw.com

Thomas E. Zehnle
(D.C. Bar #415556)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
(202) 368-4668
tezehnle@gmail.com

*Counsel for Defendant Paul J. Manafort, Jr.*

April 12, 2018

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

I.   The Appointment Order Exceeds the Acting Attorney General's Authority Under
     the Special Counsel Regulations ................................................................................. 1

     A.   The After-the-Fact Memorandum Confirms That the Jurisdiction Granted
          by the Appointment Order Exceeded the Acting Attorney General's
          Authority ............................................................................................................ 2

     B.   Assurances of "Oversight" Are Insufficient ..................................................... 6

     C.   The Special Counsel's Textual Arguments Fail ................................................. 7

II.  The Special Counsel Regulations Impose Binding Limits on the Acting Attorney
     General's Authority ................................................................................................. 10

     A.   The Acting Attorney General's Appointment Authority Is Limited by 28
          U.S.C. § 515 and the Special Counsel Regulations Implementing That
          Statute ............................................................................................................. 10

     B.   The "Individual Rights" Disclaimer Does Not Preclude This Court from
          Assessing Prosecutorial Authority and Its Own Jurisdiction ............................. 13

III. The Special Counsel's Investigation Exceeds the Appointment Order's Purported
     Grants of Jurisdiction ............................................................................................. 16

     A.   The Charges Could Not Have "Directly Arisen" from the Investigation
          into Alleged Coordination Between the Trump Campaign and Russian
          Officials ............................................................................................................ 16

     B.   The Prosecution Is Unrelated to Any Alleged Coordination Between the
          Trump Campaign and the Russian Government ................................................. 18

IV.  Dismissal Is Required ............................................................................................. 19

     A.   This Court Lacks Jurisdiction Because the Special Counsel Was
          Appointed in Excess of Authority ..................................................................... 19

     B.   The Special Counsel's Participation in the Grand Jury Proceedings Was
          Impermissible as Well ....................................................................................... 21

     C.   The Special Counsel's Participation in the Grand Jury Proceedings
          Prejudiced Mr. Manafort .................................................................................. 22

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
    522 U.S. 359 (1998)........................................................................................12

*Bank of Nova Scotia v. United States,*
    487 U.S. 250 (1988)...........................................................................23, 24, 25

*Barrick Goldstrike Mines Inc. v. Browner,*
    215 F.3d 45 (D.C. Cir. 2000) ..........................................................................13

*Caha v. United States*, 152 U.S. 211 (1894)..............................................................25

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006).........................................................17

*Erie Blvd. Hydropower, LP v. FERC,*
    878 F.3d 258 (D.C. Cir. 2017)........................................................................11

*In re Espy*, 80 F.3d 501 (D.C. Cir. 1996).....................................................................17

*In re Espy*, 145 F.3d 1365 (D.C. Cir. 1998)..........................................................13, 17

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)..............................................................6

*Knapp Med. Ctr. v. Hargan,*
    875 F.3d 1125 (D.C. Cir. 2017)......................................................................15

*Larson v. Domestic & Foreign Commerce Corp.,*
    337 U.S. 682 (1949).................................................................................10, 14

*Lopez v. FAA*, 318 F.3d 242 (D.C. Cir. 2003) ...........................................................11

*Mapp v. Ohio*, 367 U.S. 643 (1961)..............................................................................9

*Mehle v. Am. Mgmt. Sys., Inc.,*
    172 F. Supp. 2d 203 (D.D.C. 2001) ...............................................................20

*Morrison v. Olson*, 487 U.S. 654 (1988) ..............................................................5, 17

*Padula v. Webster*, 822 F.2d 97 (D.C. Cir. 1987)......................................................11

*People v. Munson*, 150 N.E. 280 (Ill. 1925) ..............................................................25

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987)........................................................11

*State v. Hardy*, 406 N.E.2d 313 (Ind. Ct. App. 1980)................................................25

*United States v. Armstrong*, 517 U.S. 456 (1996) .................................................7, 16

*United States v. Bennett*, 464 F. App'x 183 (4th Cir. 2012)............................................21

*United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975)..................................................14

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) ................................................24

*United States v. Groos*, 616 F. Supp. 2d 777 (N.D. Ill. 2008)........................................14

*United States v. Libby*, 429 F. Supp. 2d 27 (D.D.C. 2006)............................................11

*United States v. Male Juvenile*, 148 F.3d 468 (5th Cir. 1998)........................................20

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................11, 12, 21

*United States v. Plesinski*, 912 F.2d 1033 (9th Cir. 1990)............................................24

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ........................13, 20, 21

*United States v. Romans*, 823 F.3d 299 (5th Cir. 2016) ................................................20

*United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903) ................................15, 21

*United States v. Sells Eng'g*, 463 U.S. 418 (1986) ......................................................25

*United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996) ................................................15

*United States v. Vance*, 256 F.2d 82 (6th Cir. 1958) ..................................................24

*Wilderness Soc'y v. Norton*, 434 F.3d 584 (2006)......................................................12

## STATUTES AND RULES

18 U.S.C. § 3231 ............................................................................................................21

28 U.S.C. § 510 ..............................................................................................................22

\* 28 U.S.C. § 515 .......................................................................................... *passim*

28 U.S.C. § 515(a).......................................................................................10, 20, 21, 22

28 U.S.C. § 516 ..............................................................................................................21

44 U.S.C. § 1510(a)........................................................................................................12

Fed. R. Crim. P. 1(b)(1) ................................................................................................22

Fed. R. Crim. P. 1(b)(1)(A)............................................................................................22

Fed. R. Crim. P. 1(b)(1)(D)............................................................................................22

Fed. R. Crim. P. 16(d) ..................................................................................................25

Fed. R. Crim. P. 6 ........................................................................................................22

Fed. R. Crim. P. 7 ........................................................................................................22

## REGULATIONS

28 C.F.R. § 600 ............................................................................................................11

28 C.F.R. § 600.1(a) .......................................................................................................5

28 C.F.R. § 600.3 .....................................................................................................11, 22

28 C.F.R. § 600.4 ..................................................................................................3, 5, 22

* 28 C.F.R. § 600.4(a) ............................................................................................. passim

28 C.F.R. § 600.4(b) ............................................................................................2, 8, 10

28 C.F.R. § 600.6 ...........................................................................................................4

28 C.F.R. § 600.7 .........................................................................................................12

28 C.F.R. § 600.8(b) ......................................................................................................4

28 C.F.R. § 600.10 ...........................................................................................10, 13, 14, 15

## ADMINISTRATIVE MATERIALS

* Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017)................................................................................................ passim

* *Office of Special Counsel*, 64 Fed. Reg. 37038 (July 9, 1999) ............................................ passim

## OTHER AUTHORITIES

Carol D. Leonnig, Tom Hamburger & Rosalind S. Helderman, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST (Aug. 9, 2017) ..............................................................................................................3

## **INTRODUCTION**

Defendant Paul J. Manafort, Jr. respectfully submits this reply in support of his motion to dismiss the Superseding Indictment.   Far from demonstrating that the Special Counsel has authority to bring those charges, the Special Counsel's opposition confirms the opposite.   As a result, this Court lacks jurisdiction, and the Superseding Indictment must be dismissed.

## I.     **THE APPOINTMENT ORDER EXCEEDS THE ACTING ATTORNEY GENE-RAL'S AUTHORITY UNDER THE SPECIAL COUNSEL REGULATIONS**

The text of the Special Counsel Regulations is clear:   The Acting Attorney General has authority to grant the Special Counsel "[o]riginal jurisdiction" to investigate "a specific factual . . . matter."   28 C.F.R. § 600.4(a) ("The Special Counsel **will be provided** with a specific factual statement of the matter to be investigated." (emphasis added)); *see* Opp. 13 ("The Special Counsel regulations structure the definition of a Special Counsel's jurisdiction.").   Paragraphs (b)(i) and (b)(iii) of the Appointment Order identify such "original jurisdiction."   They authorize the Special Counsel to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," as well as efforts to obstruct that investigation.   Appointment Order ¶¶(b)(i), (iii).   But paragraph (b)(ii) of the Appointment Order goes further, issuing broad jurisdiction to investigate and prosecute "***any matters that arose or may arise*** directly from the investigation."   *Id.* ¶(b)(ii) (emphasis added).

The Special Counsel does not claim that paragraph (b)(ii) is a "specific factual statement of the matter to be investigated."   To the contrary, he asserts that paragraph (b)(ii) was meant to encompass "matters that were not necessarily known or fully understood at the time of the original appointment."   Opp. 27.   That is the opposite of a "specific factual statement"—it is the sort of vague catch-all the Regulations do not authorize.   The Regulations, moreover, provide a mechanism under which the Acting Attorney General can grant jurisdiction over matters not

previously "known . . . at the time of the original appointment":  The Acting Attorney General can grant the Special Counsel "additional jurisdiction" following consultation.  28 C.F.R. § 600.4(b); *see* Mot. 5-6.  But the Special Counsel does not assert that the Acting Attorney General ever granted him "additional jurisdiction" as permitted by 28 C.F.R. § 600.4(b).

The Special Counsel thus effectively concedes the case.  The prosecutorial authority exercised by the Special Counsel in the Superseding Indictment is not within a specific factual statement that can confer "original jurisdiction."  And the Special Counsel was never given "additional jurisdiction."  While the Special Counsel makes a series of arguments about other events to support his conduct, none comes close to showing a valid grant of prosecutorial authority to bring the Superseding Indictment.

### A. The After-the-Fact Memorandum Confirms That the Jurisdiction Granted by the Appointment Order Exceeded the Acting Attorney General's Authority

The Special Counsel's primary argument is that, ***months after*** the Appointment Order and unauthorized paragraph (b)(ii) issued, the Acting Attorney General "clarified" the scope of the Special Counsel's jurisdiction.  Opp. 12.  He points to an August 2, 2017 Memorandum from the Acting Attorney General that, according to the Special Counsel, "specifically confirm[s]" that the "charged conduct is clearly included within [his] jurisdiction."  Opp. 17; *see id.* Attachment C ("Mem.").  The Memorandum, however, confirms that paragraph (b)(ii) exceeds the Acting Attorney General's authority—that far from being a "specific factual statement" of the matter to be investigated, it was a blank check to be filled in after-the-fact.

The August 2, 2017 Memorandum asserts that paragraph (b)(ii) of the Appointment Order "was worded ***categorically*** in order to permit its public release," and that it "provides a more specific description of [the Special Counsel's] authority" under that Order.  Mem. 1 (emphasis added).  The Memorandum then lists issues encompassed within "***matters that arose or***

*may arise* directly from the investigation":  (i) "crimes arising out of payments" Mr. Manafort "received from the Ukrainian government before and during the tenure of President Viktor Yanukovych," and (ii) other allegations contained in redacted paragraphs.  *Id.* at 1-2.  Those matters, the Memorandum asserts, "*were* within the scope of the Investigation at the time of [the Special Counsel's] appointment and are within the scope of the Order." *Id.* at 1 (emphasis added).

That provision confirms that paragraph (b)(ii) represents a capacious catch-all that was beyond the Acting Attorney General's authority to grant under the Special Counsel Regulations. The vague phrase "matters that arose or may arise directly" came to include, months after the fact, a potpourri of purported misdeeds.  If the Acting Attorney General did not want to include certain information in the Appointment Order, he could have issued a separate, confidential grant of "original" jurisdiction with the requisite specific factual statement; or he could later have issued a confidential order granting "additional" jurisdiction over specified matters.  *See* 28 C.F.R. § 600.4.  But nothing in the Special Counsel Regulations authorizes vague grants of "and anything else" authority as part of original jurisdiction, followed by a "clarification" of included matters nearly ***three months*** into the Special Counsel's investigation—much less issuance of such "clarification" well ***after*** the Special Counsel had executed search warrants on Mr. Manafort's home.  *See* Carol D. Leonnig, Tom Hamburger & Rosalind S. Helderman, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST (Aug. 9, 2017) ("FBI agents raided" Manafort's home "on July 26, signal[ing] an aggressive new approach by special counsel Robert S. Mueller III.").  The Special Counsel Regulations authorize grants of original jurisdiction that are limited to a "specific factual statement"; they do not authorize unbounded grants followed by after-the-fact clarifications.  28

C.F.R. § 600.4(a); *see Office of Special Counsel*, 64 Fed. Reg. 37038, 37038-39 (July 9, 1999).[1]

The Special Counsel's position defies the purpose of the Special Counsel Regulations. Following a disastrous experiment with unaccountable independent counsels, Congress undertook a bipartisan project to consider how to prevent similar abuses going forward. *See* Mot. 3-5. Born of that project, the Special Counsel Regulations accommodated the desirability of appointing outside "special counsel" where ordinary prosecutors may have conflicts of interest, with the need to ensure that ultimate responsibility rests with politically accountable officials. *See Office of Special Counsel*, 64 Fed. Reg. at 37038. The requirement that the Acting Attorney General provide a "specific factual statement" of the matters to be investigated, and approve expansions of jurisdiction, ensures political accountability. The Special Counsel's position is anathema to those goals. It would permit the Acting Attorney General to grant the Special Counsel sweeping jurisdiction at the outset, without meaningful limits; fail to communicate purported limits on that jurisdiction to anyone; and then later decide, at an unspecified time, what is actually within the grant of original jurisdiction. In this case, for example, no one can be sure what ***else*** might

---

[1] The Special Counsel suggests (at 2) that the Acting Attorney General had "authority to clarify [his] jurisdiction during regular consultation." But the Memorandum was not "clarify[ing]" some purported ambiguity. It was an effort to insert additional content that simply was not there. The original grant is so extraordinarily broad—"any matters that arose or may arise"—as to be clearly unauthorized. Appointment Order ¶ (b)(ii). The Memorandum represents a months-after-the-fact effort to provide additional material found nowhere in that broad grant. Moreover, the regulations the Special Counsel cites, 28 C.F.R. §§ 600.6, 600.8(b), do not authorize supposed "clarification." Section 600.6 provides that the Special Counsel "shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney," and "shall determine whether and to what extent to inform or consult with the Attorney General or others within the Department." *Id.* § 600.6. And the only arguably relevant provision of § 600.8 provides that "[t]he Special Counsel shall notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports." *Id.* § 600.8(b). None of those provisions authorizes the Acting Attorney General to "clarify" the scope of the Special Counsel's original jurisdiction mid-stream.

retroactively be deemed part of the original grant, no matter how far removed from the mission of investigating alleged coordination between the Trump campaign and the Russian government. In the Special Counsel's view, the Acting Attorney General can always issue a later "clarification," making virtually anything that can be stuffed within the language of paragraph (b)(ii) (*i.e.*, virtually anything) fair game for the Special Counsel.   The Acting Attorney General's departure from the limits on his appointment authority—attempting to fill in the blanks later—is particularly problematic here.   Special counsel are reserved for cases involving "conflict[s] of interest . . . or other extraordinary circumstances."  28 C.F.R. § 600.1(a).  But no such circumstances prevented the DOJ from investigating the charged conduct—as evidenced by the fact that the DOJ in fact investigated it, presumably in 2014.  *See* p. 22-23, *infra*.

The Special Counsel Regulations have a specific structure:  The Acting Attorney General can grant only specific, limited original jurisdiction; he can add further matters only through specific grants of additional jurisdiction.  *See* 28 C.F.R. § 600.4.  As a result, the Acting Attorney General—a politically accountable officer—is responsible for each grant of jurisdiction **before** it is exercised.  In the Special Counsel's words, "a Special Counsel's jurisdiction is defined at the outset."  Opp. 22.  But the Special Counsel's position would turn that on its head, allowing the Acting Attorney General to deputize the Special Counsel's office as a fourth branch of government with broad, independent authority, subject to after-the-fact approval (or plausible deniability if the need arises).  *See* Opp. 24-25 (explaining separation-of-powers and political-unaccountability problems under independent counsel statute).  But the creation of that sort of "mini-Executive"—"operating in an area where so little is law and so much is discretion, . . . intentionally cut off from the unifying influence of the Justice Department, and from the perspective that multiple responsibilities provide"—is what the Special Counsel Regulations were designed to prevent.  *Morrison v. Olson*, 487 U.S. 654, 732 (1988) (Scalia, J., dissenting).

### B.      Assurances of "Oversight" Are Insufficient

Invoking the Acting Attorney General's testimony before Congress, the Special Counsel asserts that he has been subject to politically accountable "oversight."   Opp. 16.   Those assurances are legally and factually insufficient.

1.      The Special Counsel's reassurances are legally irrelevant.  The Special Counsel Regulations do not say that the Acting Attorney General can disregard limits on his appointment authority so long as he offers mid-prosecution assurances of oversight.  The Special Counsel Regulations are clear and unequivocal:  The Acting Attorney General is authorized to grant special counsel "original jurisdiction" *only* for the "specific . . . factual matter" identified.  28 C.F.R. § 600.4(a); *see* Mot. 5, 15.  The notification and consultation requirements the Special Counsel identifies (at 13-14) impose obligations *in addition to* that specific limit on authority. The Special Counsel cannot choose the provisions of the Special Counsel Regulations he likes and ignore the others.  *See, e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995).

2.      Factually, the supposed reassurances of oversight fall short.  For example, repeatedly asked whether he ever "expand[ed] the scope of the original . . . jurisdiction" set out in the Appointment Order, the Acting Attorney General testified that he did not know.  Opp. Attachment A ("Rosenstein Testimony") at 29, 31 ("I'll need to check and get back to you as to whether or not we considered particular issues to be a clarification [of the Special Counsel's original jurisdiction] or an expansion.").  To the extent the testimony is relevant, it demonstrates that the grant of original jurisdiction in the Appointment Order was in excess of the Acting Attorney General's authority:  The Acting Attorney General testified that "the specific matters [to be investigated] are not identified in the order."  *Id.* at 29.  That is exactly the opposite of what the Special Counsel Regulations require:  "The Special Counsel will be provided with a specific factual statement of the matter to be investigated."  28 C.F.R. § 600.4(a).

Tellingly, the Special Counsel has produced *no* evidence, aside from the August 2 Memorandum, of *any* communications between the Special Counsel and the Acting Attorney General.  The Special Counsel cannot rely on unsupported representations about "dialogue between the Acting Attorney General and the Special Counsel" to prove "oversight" by the Acting Attorney General instead of actually producing that evidence.  Opp. 8.  At the very least, Mr. Manafort is entitled to discovery about those other communications.

3.       Finally, the Special Counsel insists that he "can be presumed to carry out his responsibilities and confer with the Attorney General if he encounters the need."  Opp. 15.  This case concerns the Acting Attorney General's authority to issue the Appointment Order— paragraph (b)(ii) in particular—itself.  The promise of presumably "confer[ring]" if there is "need" cannot overcome the absence of authority.

The presumption of regularity applies only "in the absence of clear evidence . . . that [prosecutors] have [im]properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted).  This case begins and is replete with irregularity.  The Acting Attorney General admitted that "the specific matters [to be investigated] are not identified in the [Appointment] order."  Rosenstein Testimony 29.  The Special Counsel admits that the matters encompassed by paragraph (b)(ii) of the Order "were not necessarily known or fully understood at the time of the original appointment."  Opp. 27.  The Special Counsel Regulations require the opposite—for the Special Counsel's jurisdiction to be "defined at the outset."  *Id.* at 22.  Here, the Acting Attorney General exceeded his authority by purporting to grant undefined original jurisdiction that extended beyond any "specific factual statement of the matter to be investigated."  *See* pp. 1-5, *supra*.  Regularity this is not.

## C.       The Special Counsel's Textual Arguments Fail

The Special Counsel's effort to address the Regulations' text falls short.

1.    "The regulations," the Special Counsel asserts, "do not provide that the factual statement must be in an appointment order or otherwise made public."  Opp. 13.  But the Regulations are clear that the specific factual statement of jurisdiction at least must be **set forth**.  Here, the Acting Attorney General did not do that in the Appointment Order or any contemporaneous document.  The Appointment Order itself instead includes an impermissible catch-all that cannot qualify as a specific factual statement.  *See* pp. 1, 3, *supra*.  That catch-all is precisely what the Regulations do not permit—*carte blanche* at the outset.  *See* 28 C.F.R. § 600.4(a)-(b) (requiring the Special Counsel to ask for additional jurisdiction item-by-item).  The August 2 Memorandum confirms the expansive scope of that grant.  *See* pp. 2-5, *supra*.

The Special Counsel Regulations, moreover, distinguish between "additional" and "original jurisdiction."   The Regulations authorize the Acting Attorney General to grant "[o]riginal jurisdiction" that encompasses the "specific factual statement of the matter to be investigated."  28 C.F.R. § 600.4(a).  If the Acting Attorney General wishes to authorize the investigation of "**unrelated crimes** by targets of [the Special Counsel's] investigation," *Office of Special Counsel*, 64 Fed. Reg. at 37039 (emphasis added), he must grant the Special Counsel "additional jurisdiction" to investigate those matters, 28 C.F.R. § 600.4(b).   The Special Counsel's view—that a delimited grant of "original jurisdiction" can be filled in through "clarification" later—renders the provision for grants of "additional jurisdiction" meaningless.

Regardless, the Acting Attorney General must "establish[]" the Special Counsel's original jurisdiction by "provid[ing]" a "specific factual statement of the matter to be investigated," 28 C.F.R. § 600.4(a), so as to "define[]" the "Special Counsel's jurisdiction . . . at the outset," Opp. 22.  Here, the Special Counsel offers no evidence that the specific matters identified in the Memorandum were "provided"—or even communicated to the Special Counsel—before appearing in the August 2, 2017 Memorandum, months after the appointment.  The Special

Counsel studiously avoids making any such representation.  *See, e.g.*, Opp. 14 ([T]he Acting

Attorney General has . . . required consultation about 'additional [unspecified] matters.' "); *id.* at

16 ("[T]he Acting Attorney General 'discussed [unidentified specific matters] with [the Special

Counsel].' " (second alteration in original)).  Even if the "[t]he regulations do not provide that the

factual statement must be in an appointment order or otherwise made public," *id.* at 13, the spe-

cific factual statement that "establish[es]" original jurisdiction hasn't been "provided" if it is

nowhere communicated to the Special Counsel before he begins his investigation.

2.     The after-the-fact Memorandum, moreover, was issued after the execution of ***four***

search warrants and seizure of Mr. Manafort's property.  The later Memorandum cannot retro-

actively provide the "specific factual statement of the matter to be investigated" so as to author-

ize the warrants; jurisdiction must be established at the outset.  28 C.F.R. § 600.4(a); Opp. 22.[2]

3.     The Special Counsel attempts to justify grants of non-specific, uncabined original

jurisdiction as necessary to an "effective investigation."  Opp. 22.  "Although a criminal inves-

tigation may start with a specific set of facts," he urges, "the point of investigation is to explore

those facts, develop new ones, and continually reassess the direction of the inquiry."  *Id.*  What-

ever the process may be for ***ordinary*** criminal investigations, led by politically accountable em-

ployees, the Special Counsel Regulations provide a different approach for non-employee, outside

lawyers.  Experience with the independent counsel statute taught that outside prosecutors, who

lack competing priorities and political accountability, have an artificial incentive to pursue any

conceivable impropriety no matter how far removed from their initial mandate.  *See* p. 4, *supra*;

*see also* Mot. 3-7.  The Special Counsel Regulations rein in those incentives by declaring that, if

---

[2] At a minimum, the fruits of those warrants must be suppressed.  *See Mapp v. Ohio*, 367 U.S. 643, 657 (1961).

the Special Counsel wants to investigate a matter "beyond that *specified* in his or her original jurisdiction," he or she must obtain "*additional* jurisdiction."   28 C.F.R. §600.4(b) (emphasis added).   The Special Counsel seeks to read that structure out of the Regulations.

## II.   THE SPECIAL COUNSEL REGULATIONS IMPOSE BINDING LIMITS ON THE ACTING ATTORNEY GENERAL'S AUTHORITY

Attempting to downgrade the Special Counsel Regulations to friendly advice, the Special Counsel asserts that the Regulations "are not[] enforceable by individual defendants" because they are merely a "helpful framework."   Opp. 6, 29.   But the Special Counsel Regulations are *regulations*—regulations that implement a clear statutory directive and set binding limits on the Acting Attorney General's appointment authority.   *See* Mot. 22-27.   Because the Acting Attorney General had no power to grant that authority, the Special Counsel lacked authority to exercise it. Mr. Manafort is entitled to challenge the Special Counsel's lack of authority, whether or not the regulations create actionable private rights.   *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690-91 (1949); *see also* Mot. 25 n.4; *cf.* 28 C.F.R. §600.10.

### A.   The Acting Attorney General's Appointment Authority Is Limited by 28 U.S.C. §515 and the Special Counsel Regulations Implementing That Statute

1.   The Special Counsel Regulations implement 28 U.S.C. §515(a), which permits "any attorney specially appointed by the Attorney General . . . when *specifically directed* by the Attorney General, [to] conduct any kind of legal proceeding . . . , which United States attorneys are authorized by law to conduct."   *Id.* (emphasis added); *see generally Office of Special Counsel*, 64 Fed. Reg. 37038 (identifying 28 U.S.C. §515 as authority for Special Counsel Regulations).   In the Special Counsel Regulations, the DOJ established specific limits and requirements to implement §515(a)'s requirement that special counsel be "specifically directed."

The Special Counsel thus misses the point by observing that §515(a) does not require the Attorney General to "*adopt* any particular procedure or rules." Opp. 29-30 (quotation marks

10

omitted) (emphasis added).   The fact is, the DOJ did adopt specific limits by promulgating implementing regulations—the Special Counsel Regulations.   Once it did so, those Regulations acquired "the force of law," binding the DOJ and its officers.   *United States v. Nixon*, 418 U.S. 683, 695 (1974); *see Erie Blvd. Hydropower, LP v. FERC*, 878 F.3d 258, 269 (D.C. Cir. 2017) ("[A]n agency is bound by its own regulations." (quotation marks omitted)); *see also* Opp. 30 (quoting *Nixon*).   Having promulgated the Special Counsel Regulations, the DOJ must abide by them, even if §515 did not require their promulgation in the first instance.   *See Lopez v. FAA*, 318 F.3d 242, 246 (D.C. Cir. 2003) (Agencies must "follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions." (quotation marks omitted)); *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (similar).

The Special Counsel suggests that, "[o]n prior occasions, . . . the Attorney General or Acting Attorney General . . . appointed Special Counsels or other specially appointed attorneys . . . without invoking or relying on a regulation like 28 C.F.R. Part 600."   Opp. 30.   Two of the Special Counsel's three cited examples—the Iran-Contra and Watergate special prosecutors— were appointed decades ***before*** the Special Counsel Regulations were promulgated in 1999.   *See Nixon*, 418 U.S. at 694-95 (Watergate); *In re Sealed Case*, 829 F.2d 50, 51-53 (D.C. Cir. 1987) (Iran-Contra).   The third example—the appointment of a United States Attorney to investigate the Valerie Plame leak—did not involve the Special Counsel Regulations because no ***outside*** Special Counsel was appointed.   *United States v. Libby*, 429 F. Supp. 2d 27, 29 (D.D.C. 2006); *see* 28 C.F.R. §600.3 (special counsel "selected from outside the United States Government").   The "conferral . . .of the title 'Special Counsel'" did not suggest that the already duly appointed United States Attorney acting as "Special Counsel" was "limited by 28 C.F.R Part 600."   *Libby*, 429 F. Supp. 2d at 29.   Besides, prior *ultra vires* conduct, unreviewed by the courts, does not

authorize later *ultra vires* acts.  *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("[C]onsistent repetition of [a] breach can hardly mend it.").

2.      Comparing "[t]he Special Counsel regulations" to "other internal guidance documents promulgated to regulate DOJ procedures," Opp. 31, the Special Counsel invokes cases holding that the United States Attorneys' Manual and various DOJ guidelines are nonbinding.  But the Special Counsel overlooks the critical difference.  The Special Counsel Regulations are **regulations** published in the Code of Federal Regulations—not non-binding agency guidance in manuals or memoranda.  By statute, only "documents having general applicability **and legal effect**" are published in the Code of Federal Regulations; that is "[t]he real dividing point between regulations and general statements of policy."  *Wilderness Soc'y v. Norton*, 434 F.3d 584, 596 (2006) (quotation marks omitted); *see* 44 U.S.C. § 1510(a) (C.F.R. contains government "documents . . . having general applicability and legal effect."); *see also* 28 C.F.R. § 600.7 (special counsel to "comply with" the DOJ's "rules [and] regulations").

That difference is dispositive.  If the DOJ had intended for the limitations now contained in the Regulations to be nothing more than "a helpful framework," Opp. 6, it could have included them in a policy document or manual.  But the DOJ instead chose to promulgate them as binding regulations that "have the force of law."  *Id.* at 30 (quoting *Nixon*, 418 U.S. at 695).  The DOJ is bound by that law—and by the limitations on appointment authority the law imposes.

3.      The Special Counsel's theory contravenes the history of the Special Counsel Regulations.  Those Regulations were promulgated to reassure Congress that the lack of political accountability experienced under the independent counsel regime would not recur.  *See* p. 4, *supra*; *see also* Mot. 3-5.  Having promulgated binding regulations to reassure Congress that the excesses of the independent counsel regime would not be repeated, the Special Counsel cannot now downgrade the Regulations to "helpful" advice.  Opp. at 6.  An agency may not use self-

serving statements to strip legal effect from an otherwise binding rule.  *See Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000) (rule cannot "escape judicial review" because agency "labels its action an 'informal' guideline").

The Special Counsel's view would render the Special Counsel Regulations a step ***backwards*** in accountability from the independent counsel statute.  The Special Counsel Regulations were designed "to replace the procedures set out in the Independent Counsel [statute]" and "to address . . . the tendency of [independent counsel] investigations to sprawl beyond the reason for their initiation" without proper political accountability.  Mot. 14 (quotation marks omitted).  At least under the independent counsel statute, expansions of independent counsels' jurisdiction were ***reviewable***.  *See* Mot. 33 (citing *In re Espy*, 145 F.3d 1365, 1367 (D.C. Cir. 1998) (per curiam)); Opp. 25-26 (explaining review scheme).  In the Special Counsel's view, courts are now powerless to address whether a special counsel even has jurisdiction.  That moves us from too little accountability to even less.

> **B.**      **The "Individual Rights" Disclaimer Does Not Preclude This Court from Assessing Prosecutorial Authority and Its Own Jurisdiction**

The Special Counsel's insistence that the Special Counsel Regulations "disclaim the creation of individual rights," Opp. 32 (citing §600.10), fares no better.  Mr. Manafort is not asserting the violation of any ***individual right***.  He is not claiming the Regulations entitle him to something.  He is raising the Acting Attorney General's and Special Counsel's ***lack of authority***.  *See* pp. 19-21, *infra*; *see also* Mot. 25 n.4.  This Court is empowered—indeed, obligated—to determine whether the Acting Attorney General validly conferred jurisdiction on the Special Counsel to pursue the Superseding Indictment.  If he did not, and the Special Counsel lacked jurisdiction, this Court lacks jurisdiction as well.  *See United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988).

13

1.      The Supreme Court has long distinguished between actions based upon a federal official's "lack of delegated power," on the one hand, and actions challenging a federal officer's actions as illegal, "whether or not [they] be within" the official's "delegated powers."  *Larson*, 337 U.S. at 691-92.  Under *Larson*, the former are permissible, even when the latter are not.  *Id.* The Special Counsel claims that *Larson* addressed a lack of "***statutory*** authority," not authority under ***regulations***.  Opp. 34.  That is a distinction without a difference.  The key point in *Larson* is that individuals can challenge an officer's assertion of authority against them, whether that limit on authority derives from a statute or a regulation with the force and effect of law.  The Special Counsel Regulations, moreover, reflect the DOJ's interpretation of 28 U.S.C. § 515, a statutory provision.  *See* pp. 10-11, *supra*.

Nor is it true that *Larson* "contemplated a violation of an individual's rights, not simply an absence of an official's authority."  Opp. 34.  In *Larson*, the Supreme Court permitted the challenge (despite claims of immunity) to determine whether the federal officers or agencies acted "in excess of . . . authority or under an authority not validly conferred," 337 U.S. at 690-91, without mentioning any "contemplated . . . violation of an individual's rights," Opp. 34.  And although the Special Counsel points out (at 34-35) that *Larson* was a civil, not criminal, case, nothing in the case suggests that unauthorized civil conduct is off-limits but unauthorized criminal actions can be brought with impunity.  *Larson* is often applied in the criminal context. *See, e.g.*, *United States v. Briggs*, 514 F.2d 794, 808 n.25 (5th Cir. 1975) (invoking *Larson* on motion to strike language from indictment); *United States v. Groos*, 616 F. Supp. 2d 777, 785 n.8 (N.D. Ill. 2008) (similar).

2.      Section 600.10 is both limited and clear.  It says that that the Special Counsel Regulations do not create individual rights.  It does not say that the Regulations impose no limits on the authority to appoint special counsel or the scope of jurisdiction special counsel can ex-

ercise.   The federal courts have a long history of determining whether they have a properly appointed prosecutor before them.   When they do not, jurisdiction is wanting.   *See, e.g.*, *United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903); Mot. 25 n.5 (collecting cases).   To contravene that tradition, the DOJ at the very least had to include language in § 600.10 that would disclaim such challenges.   That it did not, disclaiming only rights-creation instead, speaks volumes.

In Mr. Manafort's civil action, the Special Counsel urged that the Special Counsel's lack of authority should be raised on a motion to dismiss the Superseding Indictment.   Now that such a motion has been filed, the Special Counsel insists that the Court cannot consider the challenge at all.   But the Special Counsel cites no case holding that prosecutors can purport to wield unchecked power and that the courts in which they attempt to exercise that power are powerless to question their legal authority.   There is a "strong presumption that Congress intends judicial review of administrative action."   *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017) (quotation marks omitted)).   Only a "clear statement of congressional intent" otherwise can "preclude review."   *Id.* at 1128.   There is no such clear evidence here.[3]

Invoking policy, the Special Counsel declares that "[s]everal of the reasons supporting the general rule against judicial review of the exercise of prosecutorial discretion have salience here."   Opp. 32.   None of them do.   The issue is not whether the Special Counsel has properly exercised **discretion** that has been granted to him.   It is whether the Special Counsel has valid **authority** to pursue the Superseding Indictment **at all**.   Nothing about that question raises any

---

[3] For that reason, *United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996), which found referral decisions under the independent counsel statute unreviewable, has no relevance.   *See* Opp. 33 & n.10.   As the Special Counsel admits, the court found referrals under that statute unreviewable due to "irrefutable" legislative history weighing against judicial review.   *Id.*; *see Tucker*, 78 F.3d at 1318.   Consequently, *Tucker* in no way supports the assertion that an *ultra vires* appointment of special counsel is beyond judicial purview even in the very court where the Special Counsel purports to exercise unauthorized power.

issue of discretionary decision-making.  *See Armstrong*, 517 U.S. at 464.

### III.   THE SPECIAL COUNSEL'S INVESTIGATION EXCEEDS THE APPOINT-MENT ORDER'S PURPORTED GRANTS OF JURISDICTION

#### A.   The Charges Could Not Have "Directly Arisen" from the Investigation into Alleged Coordination Between the Trump Campaign and Russian Officials

The Special Counsel claims that the charges in the Superseding Indictment were within the scope of his jurisdiction as set out in paragraph (b)(ii), which purports to grant jurisdiction over matters that "arose or may arise directly from the investigation," Appointment Order ¶(b)(ii).  Opp. 19.  For the reasons given above (at 1-10), the Acting Attorney General lacked authority to grant such jurisdiction; the Special Counsel thus lacked authority to exercise it.  *See* Mot. 14-21.  The Superseding Indictment in any event does not even fall within the authority that paragraph (b)(ii) ***purports*** to grant.

First, the Superseding Indictment's allegations do not "***arise directly from***" the Special Counsel's investigation:  Lawfully appointed DOJ prosecutors ***knew about*** the alleged conduct years ago and chose not to pursue it.  *See* p. 22, *infra*; *see also* Mot. 30, 35.  Already-known conduct cannot "arise from" a later investigation.  The Special Counsel does not suggest otherwise.  The Special Counsel instead drops a footnote observing that the Superseding Indictment accuses Mr. Manafort of certain reporting violations in 2017.  Opp. 42 n.13 (citing Superseding Indictment ¶¶2-4, 27, 43).  But that cannot rescue ***other*** charges.  And even those supposed reporting violations concern the same conduct—consulting work in Ukraine—already known to the DOJ in July 2014.  *See* Superseding Indictment ¶¶27, 43.  Because that conduct was known to the DOJ before the Special Counsel began his work, charges based on that conduct cannot "arise directly from" his investigation.  *See* Mot. 31-36.[4]

---

[4] The charges thus could not have arisen from the FBI's investigation either.  *See* Opp. 3-4.

Moreover, the phrase "arose or may arise directly from," at a minimum, requires that any new charges the Special Counsel brings cover conduct he learns of *because of* his original investigation. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 489 (2006); *see* Mot. 32-33. And, under *Espy*, the new charges must be "***demonstrably related to***" the original investigation. 145 F.3d at 1368 (emphasis added) (quotation marks omitted); *see* Mot. 33-34. The stale accusations here— with no connection to Russian coordination—meet neither standard. *See* Mot. 34-36.

The Special Counsel denies *Espy*'s relevance, claiming it addressed "constitutional concerns" about "the judiciary's ability to assign prosecutorial jurisdiction" under *Morrison v. Olson*. Opp. 24-25. Under the independent counsel regime, court referrals to the independent counsel were limited, avoiding "constitutional difficulties" that might arise from judges assigning prosecutorial authority. *Id.* at 25-26 (quoting *In re Espy*, 80 F.3d 501, 507 (D.C. Cir. 1996)). According to the Special Counsel, no such concerns exist here. Opp. 26. But this is not an abstract constitutional case. It concerns the binding text of the Regulations and Appointment Order. Under *Espy*, the "aris[ing] directly from" language in the Appointment Order limits the Special Counsel to matters that causally resulted from and demonstrably related to the authorized investigation. The Superseding Indictment goes well beyond that. There are important con- stitutional—separation-of-powers—principles at issue here. The Special Counsel Regulations seek to ensure that a politically accountable official retains control, issue by issue, of the investigation. Granting the Special Counsel a blank check—and construing it more broadly than *Espy* would allow—threatens creation of the unaccountable fourth branch Justice Scalia warned of in *Morrison*. *See* p. 5, *supra*.

The Special Counsel also objects that "constru[ing] the phrase 'arises directly from'" according to ***precedent*** "is misplaced" because the Order "is not a statute, but an instrument for providing public notice." Opp. 20. But the Special Counsel Regulations say nothing about

giving "public notice."  They impose binding ***limits on authority*** to ensure "accountability" and prevent free-wheeling investigations by individuals without political accountability.  *Office of Special Counsel*, 64 Fed. Reg. at 37038.  There is no justification for disregarding settled judicial usage when determining the meaning of the terms that the DOJ itself—fully aware of those terms' history—chose to use when establishing those limits.

### B.   The Prosecution Is Unrelated to Any Alleged Coordination Between the Trump Campaign and the Russian Government

Apparently recognizing the vulnerability of paragraph (b)(ii), the Special Counsel alternatively argues that the conduct charged in the Superseding Indictment falls "within the scope of paragraph (b)(i)," which extends to "'coordination between the Russian government and individuals associated with the campaign of President Donald Trump.'"  Opp. 18 (quoting Appointment Order ¶(b)(i)).  The Special Counsel insists that the charges against Mr. Manafort relate to supposed "ties" between Mr. Manafort and "Russian-associated" or "Russian-backed" persons.  Opp. 18-19.  But that defies the August Memorandum, which purports to categorize the conduct in the Superseding Indictment as falling within a purported "clarifi[cation]," *id.* at 12 & 17 n.7, of the "categorically" worded paragraph (b)(ii), Mem. 1.  And the charges cannot fall within (b)(i) because they have nothing to do with alleged coordination between Russian officials and the Trump campaign in any event.  *See* Mot. 26-27.

The charges in the Superseding Indictment stem from consulting work in Ukraine that began nearly a decade before the Trump campaign launched.  They address years-old allegations from ***2008 to 2014***, long before Mr. Manafort's brief involvement in the campaign.  *See* Mot. 26-27.  They cover work in ***Ukraine***, not Russia.  *See id.*  And they say nothing about any supposed coordination between the Russian government and the Trump campaign.  *See id.*

That Mr. Manafort was at one point "'associated with the [Trump] campaign,'" Opp. 18, is not enough. The charges have no connection to the campaign or his involvement. The Superseding Indictment nowhere alleges that Mr. Manafort had anything to do with alleged "coordination [with] the Russian government" while he was associated with the Trump campaign—indeed, the Special Counsel has not even suggested that he is investigating Mr. Manafort on that subject. Without any allegations about Russian coordination, the Superseding Indictment cannot plausibly fall within paragraph (b)(i)'s grant of jurisdiction.

Nor does paragraph (c) of the Appointment Order, which empowers the Special Counsel to **prosecute** crimes "'arising from the investigation,'" Opp. 19, authorize the charges. Paragraphs (b)(i)-(iii) limit the Special Counsel's investigative authority. The authority to prosecute under paragraph (c) is no broader. Appointment Order ¶(c). "[F]ollow[ing] the money trail" from Mr. Manafort's consulting work for Ukrainian politicians is not within the scope of the Special Counsel's original investigatory jurisdiction because it does not relate to the specific factual matter of alleged coordination between the Trump campaign and Russia. Opp. 19; *see* p. 18, *supra*. It thus does not fall within the scope of the Special Counsel's prosecutorial jurisdiction either.

## IV.   DISMISSAL IS REQUIRED

### A.   This Court Lacks Jurisdiction Because the Special Counsel Was Appointed in Excess of Authority

For over a century, courts have agreed that, absent a properly appointed prosecutor, courts lack jurisdiction. *See* Mot. 21-25 & n.5. Defying that precedent, the Special Counsel insists that "any error in assigning these matters to the Special Counsel" does not "deprive[] this Court of jurisdiction." Opp. 36. Not so. The Special Counsel lacks authority to conduct legal proceedings unless "specifically directed by the Attorney General" or Acting Attorney General.

28 U.S.C § 515(a).   The Special Counsel Regulations limit the Acting Attorney General's authority to appoint outside lawyers.   *See* pp. 10-16, *supra*.   Here, the Acting Attorney General did not have authority under the Special Counsel Regulations to grant the jurisdiction set forth in paragraph (b)(ii) at all.   Because the Acting Attorney General had no power to grant that jurisdiction, the Special Counsel lacks authority to exercise it.   28 U.S.C. § 515(a).   Without "a proper representative of the Government as a [party] in this criminal prosecution," "jurisdiction is lacking."   *Providence Journal*, 485 U.S. at 708.

The Special Counsel attempts to distinguish *Providence Journal* as resting on a statute (not a regulation) that denied the special prosecutor authority to petition for a writ of certiorari. Opp. 37.   But this case is not meaningfully different:   Here, the Acting Attorney General exceeded his authority by issuing a blank check instead of the "specific[] direct[ions]" § 515 and the implementing Special Counsel Regulations require.   That deprives this Court of the "proper representative of the Government" needed to secure jurisdiction.   *See Providence Journal*, 485 U.S. at 708.   The Special Counsel insists that, in *Providence Journal*, the Supreme Court's jurisdiction required "a formal step"—a petition for a writ of certiorari.   Opp. 37.   But this Court's jurisdiction requires such a step as well:   The criminal jurisdiction of federal courts "is invoked by an indictment."   *United States v. Romans*, 823 F.3d 299, 315 (5th Cir. 2016).   If a prosecutor lacks authority to bring that indictment—just as the special prosecutor in *Providence Journal* lacked authority to file the certiorari petition—the "formal step" needed to invoke jurisdiction is missing.   485 U.S. at 708; *see* Mot. 24-25 & n.5.[5]

---

[5] The Special Counsel claims that, although the cases cited in the motion to dismiss refer to the court's "'jurisdiction[],'" the cases really meant "an attorney's statutory authority to represent the government," and that other cases "concerned the court's authority to adjudicate the case." Opp. 38 & n.11.   But these too are other ways of saying the courts lacked jurisdiction.   In *Mehle v. American Management Systems, Inc.*, 172 F. Supp. 2d 203 (D.D.C. 2001), and *United States v.*

Relying exclusively on cases that pre-date the 1999 Special Counsel Regulations, the Special Counsel argues that, under § 515(a), "officers need not be given specific authorization to appear in particular criminal cases."  Opp. 35-36 (citing cases from 1975 and 1976).   But the Regulations created specific limits on the power to appoint outside lawyers to ensure that all special counsel are "specifically directed," *id.* at 5, within the meaning of § 515(a).  *See id.* at 35.  Unless the DOJ revokes the Regulations, they have the force of law and cannot be disregarded.  *See Nixon*, 418 U.S. at 696; *see also* pp. 10-16, *supra.*

Nor does 18 U.S.C. § 3231, which provides jurisdiction over "'offenses against the laws of the United States,'" cure the defect.   Opp. 36 (quoting § 3231).   As the Special Counsel admits, only "'officers of the [DOJ], under the direction of the Attorney General,'" may conduct federal criminal proceedings.   Opp. 35 (quoting 28 U.S.C. § 516).   The Special Counsel is not such an officer because his appointment exceeded the Acting Attorney General's authority.   *See* pp. 1-10, *supra.*   An invalidly appointed prosecutor cannot be an "officer of the United States."  *See, e.g.*, *Rosenthal*, 121 F. at 874 (dismissing indictments because proceedings were "conducted without authority").   Dismissal is required.   *See Providence Journal*, 485 U.S. at 708.

### B.   The Special Counsel's Participation in the Grand Jury Proceedings Was Impermissible as Well

Because the Special Counsel lacks authority to bring these charges, he is also not a

---

*Male Juvenile*, 148 F.3d 468 (5th Cir. 1998), for example, the courts **dismissed** cases because they were brought by unauthorized prosecutors, depriving the courts of jurisdiction.  That is the case here too.  The Special Counsel lacks authority to represent the United States.  As a result, this Court lacks jurisdiction.  *See* pp. 16-20, *supra.*   The Special Counsel points out that, in *United States v. Bennett*, 464 F. App'x 183 (4th Cir. 2012), the signature of an unauthorized prosecutor on an indictment was harmless error.  But there, too, the court confirmed the general principle that "[a] federal court is without jurisdiction in a criminal prosecution where the Government lacks an authorized representative."  *Id.* at 184-85.  Besides, there can be no claim of harmlessness here.  *See* pp. 22-25, *infra.*

lawfully appointed "[a]ttorney for the government" entitled to appear before the grand jury, or sign the indictment, under Federal Rules of Criminal Procedure 6 and 7.  *See* Fed. R. Crim. P. 1(b)(1) (defining "[a]ttorney for the government").  The assertion that the Special Counsel has "statutory authority under Section 515," Opp. 39, again misses the mark:  The Acting Attorney General's appointment authority is limited by § 515(a) *and* its implementing regulations, *i.e.*, the Special Counsel Regulations.  *See* pp. 10-16, *supra*.  Because the Appointment Order exceeded the Acting Attorney General's authority, the Special Counsel is neither an "authorized assistant" of the Attorney General, nor an "attorney authorized by law to conduct proceedings under these rules as a prosecutor."  Fed. R. Crim. P. 1(b)(1)(A), 1(b)(1)(D); *see also* Mot. 27-31.

That result leads to no "untenable consequences."  Opp. 40.  Cases would not, for example, be dismissed if brought by the wrong division within the DOJ.  *Id.*  The problem here is that the Special Counsel is not a DOJ attorney at all.  He was "selected from *outside* the United States Government."  28 C.F.R. § 600.3 (emphasis added).  For that reason, the scope of the Acting Attorney General's appointment authority, and the Special Counsel's authority under the appointment, are sharply limited by binding regulations.  *Id.* § 600.4.  By contrast, the Attorney General has considerable latitude to delegate prosecutorial functions to line DOJ attorneys.  28 U.S.C. § 510.  Indeed, § 515(a)'s requirement that the Attorney General "specifically direct[ ]" authority, *id.* § 515(a), applies only to special appointments, not line-attorney assignments.

### C. The Special Counsel's Participation in the Grand Jury Proceedings Prejudiced Mr. Manafort

Finally, the Special Counsel argues that any violation of Rules 6 and 7 was "harmless," dismissing the contrary evidence as "speculation" and "imagin[ation]."  Opp. 42-43.  But the Special Counsel does not deny that Mr. Manafort *already disclosed* his consulting activities to DOJ prosecutors as early as 2014.  *See* Mot. 30.  Nor does he deny that prosecutors *did not*

*charge* Mr. Manafort for that conduct.  *See id.*  With those critical facts undisputed, it is simple history, not imagination, that demonstrates the Special Counsel's "substantial influence" on the charges here.  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).  That is sufficient to show prejudice warranting dismissal.  *See id.*; *see also* Mot. 29-31.

The Special Counsel insists that "the supervision and involvement of other DOJ career attorneys" renders his participation "harmless."  Opp. 41, 43.  But the Special Counsel's participation was undoubtedly at least a "substantial influence" in this matter.  *Bank of Nova Scotia*, 487 U.S. at 256.  Indeed, *the Special Counsel* is the *controlling force*.  The Special Counsel does not contend otherwise.  That only the Special Counsel signed the Superseding Indictment on behalf of the government makes that clearer still.

The Special Counsel asserts that his "decision to seek an indictment was supervised and approved by the Acting Attorney General."  Opp. 43.  But the Acting Attorney General testified only that he believed the Special Counsel had been "conducting himself consistently with [the Department's] understanding about the scope of his investigation," and that he was "comfortable with the process that was followed with regard to th[e] [initial] indictment."  *Id.* (alteration in original) (quoting Rosenstein Testimony 28, 146).  Those remarks do not establish that the Superseding Indictment is within the scope of permissible original jurisdiction.  They establish nothing about the Superseding Indictment at all.  The Superseding Indictment is dated February 23, 2018, more than *two months after* the Acting Attorney General's December 13, 2017 testimony.  And those remarks surely do not show that, *absent* the Special Counsel's impermissible participation, the Acting Attorney General would have chosen the same course himself.  The prior decisions by long-time prosecutors not to pursue these charges prove the opposite.  The requisite "substantial influence" undeniably exists.

Moreover, other than invoking the Acting Attorney General's purported "comfort[ ],"

Opp. 43, the Special Counsel nowhere explains what supposed "supervision and involvement" other "DOJ career attorneys" offered the Special Counsel.  *Id.* at 41.  He points to the fact that "the Senior Assistant Special Counsel in charge of this prosecution is a long time, career prosecutor with the internal authority to conduct this prosecution," but fails to explain how that person—the Special Counsel's ***subordinate***—could have "supervised" the Special Counsel's investigative and charging decisions.  *Id.* at 42.  Those unelaborated assertions about other participants do not dispel the "substantial influence" the Special Counsel exercised here.  *Bank of Nova Scotia*, 487 U.S. at 256.[6]  Besides, if the Special Counsel does not have jurisdiction, the subordinates in his office don't either, regardless of where they were drawn from.

The cases the Special Counsel cites (at 41-42) offer no support.  In *United States v. Plesinski*, 912 F.2d 1033 (9th Cir. 1990), the defendant sought to dismiss an indictment based on the presence of improperly appointed prosecutor before the grand jury.  *Id.* at 1038.  But the attorney "'did not say or do anything nor did anyone make reference to him in front of the grand jury.'"  *Id.* at 1038 n.9.  Similarly, in *United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994), the court concluded that a defendant was not prejudiced where the improperly appointed prosecutor played a "minimal" role.  *Id.* at 1066.  That is hardly the situation here, where the Special Counsel was the leader and driving force behind the charges.  *See* Mot. 30-31.

The remaining cases (at 41-42) involve mistakes about ***which*** duly authorized government attorney signed the indictment.  *See United States v. Vance*, 256 F.2d 82, 83 (6th Cir. 1958) (signature of Assistant United States Attorney, instead of United States Attorney,

---

[6] Similarly, the Special Counsel's assertion that "the applicable rules" required the Special Counsel to obtain "approv[al]" from the National Security Division for the Foreign Agents Registration Act charges and from the Tax Division for the tax-related charges does not show that those Divisions did ***in fact*** approve the charges beforehand or that they would have brought them absent the Special Counsel's urging.  Opp. 42.

harmless); *Caha v. United States*, 152 U.S. 211, 221 (1894) (similar).   In those cases, it was undisputed that the prosecuting attorney had authority to prosecute.   Here, by contrast, the person who sought the Superseding Indictment in the first place, and signed it, lacked authority.

Courts regularly find prejudice warranting dismissal of an indictment where, as here, an unauthorized prosecutor's involvement in grand jury proceedings or the indictment process is more than trivial.   *See, e.g.*, *State v. Hardy*, 406 N.E.2d 313, 316 (Ind. Ct. App. 1980) (unauthorized prosecutor's "presence and active participation" in grand jury proceedings prejudiced defendant); *People v. Munson*, 150 N.E. 280, 283 (Ill. 1925) (dismissing indictment "procured directly through the assistance of" unauthorized prosecutor).   No "speculation," Opp. 42, is needed to conclude that the Special Counsel's extensive and unauthorized involvement was, at the very least, a "substantial influence." *Bank of Nova Scotia*, 487 U.S. at 256.[7]

Finally, the Special Counsel claims that finding prejudice here would "strike the wrong balance between societal costs and the rights of an accused."   Opp. 44.   But the Special Counsel does not get to decide the appropriate "balance."   The Special Counsel Regulations do that. They "strike" the "balance" "between independence and accountability."   *Office of Special Counsel*, 64 Fed. Reg. at 37038.   This Court should restore that balance by dismissing the Superseding Indictment, confining the Special Counsel to his properly granted authority.

## CONCLUSION

The Superseding Indictment should be dismissed.

---

[7] To the extent there is any doubt about the level of the Special Counsel's participation in the grand jury process, the Court should order production of the grand jury transcripts.   *See* Mot. 31 n.8 (citing *United States v. Sells Eng'g*, 463 U.S. 418, 443 (1986)).   The Special Counsel's hyperbolic claim that such a production would "impose tremendous costs," Opp. 44, is baseless: Any possible risk of impairing grand jury secrecy could be prevented by appropriate protective orders.   *See* Fed. R. Crim. P. 16(d) (authorizing protective orders in criminal cases).

Dated:   April 12, 2018                        Respectfully submitted,
         Washington, D.C.


                                               /s/ Kevin M. Downing
                                               Kevin M. Downing
                                               (D.C. Bar #1013894)
                                               601 New Jersey Avenue, N.W.
                                               Suite 620
                                               Washington, D.C.  20001
                                               (202) 754-1992
                                               kevindowning@kdowninglaw.com

                                               /s/ Thomas E. Zehnle
                                               Thomas E. Zehnle
                                               (D.C. Bar #415556)
                                               601 New Jersey Avenue, N.W.
                                               Suite 620
                                               Washington, D.C.  20001
                                               (202) 368-4668
                                               tezehnle@gmail.com

                                               *Counsel for Defendant Paul J. Manafort, Jr.*